**UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JACK TIPOLD, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC,<br><br>Defendant. | Case No.<br>Hon.<br><br>CASE BELOW:<br>Porter County Superior Court 1,<br>State of Indiana<br>Cause No. 64D01-2608-CT-009189 |

**NOTICE OF REMOVAL**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant Northern Indiana Public Service Company, LLC ("NIPSCO") provides notice of removal of this action from the Porter County Superior Court 1 in Porter County, Indiana, where it is currently pending, to the United States District Court for the Northern District of Indiana, Hammond Division. In support of this Notice of Removal, NIPSCO states as follows:

## I. INTRODUCTION

1. Plaintiffs bring this proposed class action on behalf of "[a]ll Indiana residents who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to disruption of electrical service and

widespread power outage on and after August 17, 2024." Ex. 1 ¶ 12. This case follows the historic derecho system and several other powerful and damaging storms that devastated Northern Indiana last month, including "the August 11, 2026, outage[s] which left 317,000 NIPSCO customers without power." *Id.* ¶ 25. Plaintiffs' lawsuit is subject to dismissal on myriad grounds and, in all events, is not appropriate for class certification. Nevertheless, assuming Plaintiffs' allegations are true for the purposes of determining jurisdiction, this asserted class action is properly removed to this Court *both* under CAFA, as it meets that statute's minimal diversity, putative class size, and aggregate amount in controversy requirements, and under federal enclave jurisdiction, as claims or damages alleged arose in part on federal enclaves. NIPSCO has also complied with all procedural requirements. NIPSCO therefore exercises its right to remove this case to federal court.

## II. BACKGROUND

2. On August 17, 2026, Plaintiff Jack Tipold filed an action alleging individual claims entitled *Jack Tipold v. Northern Indiana Public Service Company*, *LLC*, Case No. 64D01-2608-CT-009189 in the Porter County Superior Court 1, Porter County, Indiana (the "Action").

3. That evening, Plaintiff Tipold filed a "First Amended Complaint – Class Action Complaint" ("Class Action Complaint") in the Action adding putative class claims and co-Plaintiffs Margaret Shragal, Genell Creal and Wiley Creal, Teresa Baron, Alfred and Latasha Allen, Malaya Gully, Michael Zimmer, William Zabaneh, Carol Norris and Kim Norris, Lawrence Sharon, Dustin Brown and Jennifer Brown and Joshua Brown, and Charles Bray. *See* Ex. 1.[1]

---

[1] This amendment followed forum-shopping. Plaintiff Margaret Shragal (represented by the same counsel) had filed a class action complaint against NIPSCO on August 14, 2026, asserting identical claims, which she then voluntarily dismissed on August 18 to proceed in this Action. *See Shragal v. NIPSCO*, No. 64D02-2608-CT-009144 (Ind. Super. Ct. 2, Porter County). Plaintiffs Genell and Wiley Creal (represented by the same counsel) filed separate individual actions the same day as Plaintiff Tipold, asserting the same individual claims as him, which they also dismissed on August

4. Plaintiffs served NIPSCO with the Class Action Complaint on August 27, 2026. NIPSCO has attached the complete State Court Record as Exhibit 2, including a Certificate of Issuance of Summons and Return of Service filed by Plaintiffs confirming that NIPSCO was served "on August 27, 2026." Ex. 2 at 25 ¶ 4.

5. In their Class Action Complaint, Plaintiffs assert the following definition of the class they seek to represent (the "Proposed Class"):

> All Indiana residents who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to disruption of electrical service and widespread power outage on and after August 17, 2024.

Ex. 1 ¶ 12. Plaintiffs allegedly exclude "non-residents of Indiana" from the Proposed Class, along with "NIPSCO's officers, directors, trustees, upper management, and other related and subordinate entities controlled by NIPSCO, as well as the judge assigned to this action, and any member of the judge's immediate family." *Id.* ¶ 13.

6. On September 10, 2026, Plaintiffs filed a "Motion for Preliminary Certification as Class Action" in the Action requesting a hearing to certify the same Proposed Class and to appoint only Jack Tipold as the class representative. *See* Ex. 2 at 35 (prayer for relief).

7. Plaintiffs assert class claims for: (a) "economic loss," including for lost "perishable goods"; (b) "physical and/or emotional pain and suffering"; and (c) "punitive damages." Ex. 1 ¶¶ 27-28, p. 10 (prayer for relief).

8. NIPSCO disputes Plaintiffs' allegations and anticipates moving to dismiss and/or strike on various legal grounds.

---

18 to proceed in this Action. *See Creal v. NIPSCO*, No. 45D10-2608-CT-000877 (Ind. Super. Ct., Lake Super. Ct.).

9. In any event, NIPSCO acknowledges Plaintiffs' allegations for the limited purpose of assessing whether this suit meets the requirements for removal. *See St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938) ("The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not … oust the jurisdiction."); *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854–55 (7th Cir. 2022) (to satisfy the amount-in-controversy requirement, a removing defendant may rely on "the complaint's allegations" and the "plaintiff's informal estimates").

10. As set forth more fully below, this case is properly removed to this Court under both CAFA and federal enclave jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1453. NIPSCO has satisfied the procedural requirements for removal. This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(d).[2]

## III. BASIS FOR REMOVAL

11. A notice of removal, like a complaint, need only contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446. As the Supreme Court has explained, "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, p. 71 (1988)). In keeping with this approach, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

[2] NIPSCO does not waive any argument that this matter is entirely unsuitable for class certification by arguing that it is nevertheless removable under 28 U.S.C. § 1332. *See Cunningham Charter Corp. v. Learjet, Inc*., 592 F.3d 805, 806–07 (7th Cir. 2010) (federal jurisdiction under CAFA does not depend on certification); *Greenberger v. GEICO Gen. Ins. Co*., 631 F.3d 392, 396 (7th Cir. 2011) (district court's later denial of class certification does not oust the court's subject-matter jurisdiction based on CAFA) (citing *Cunningham Charter Corp.*, 592 F.3d at 806). NIPSCO expressly reserves all arguments against Plaintiffs' profoundly flawed class allegations.

12. An evidentiary showing is required at removal only if, *after* the defendant has filed the notice of removal, the plaintiff contests, or the court questions, particular allegations by the defendant. *Dart Cherokee*, 135 S. Ct. at 554. Even then, however, the removing party need only demonstrate those jurisdictional facts by a preponderance of the evidence. *Id.* In other words, the defendant need not prove that damages *are* greater than the removal threshold; the defendant need only establish facts showing it is "*possible*" that the requisite amount is "in play." *McPhail v. Deere & Co.*, 529 F.3d 947, 855 (10th Cir. 2008).

**A. NIPSCO Has Satisfied the Procedural Requirements for Removal.**

13. NIPSCO's removal of this action to this Court is timely. The Complaint and Summons were served upon NIPSCO by certified mail on August 27, 2026. This Notice of Removal has been filed within thirty days of that date, as required by 28 U.S.C. § 1446(b)(1).

14. Venue is proper in this Court because the Porter Superior Court 1 is located in the Northern District of Indiana, Hammond Division. *See* 28 U.S.C. § 1441(a) (a state-filed action subject to federal jurisdiction may be removed "to the district court ... for the district and division embracing the place where such action is pending"); 28 U.S.C. § 94(a)(3) (Hammond Division).

15. As required under 28 U.S.C. § 1446(a), NIPSCO has attached as Exhibit 3 copies of all process, pleadings, and orders served upon NIPSCO with respect to this Action.

16. As required under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon Plaintiffs' counsel, and a copy is being filed with the Clerk of the Porter County Superior Court I in Porter County, Indiana.

**B. This Court Has Subject Matter Jurisdiction Over This Action Under CAFA.**

17. Under CAFA, this Court has diversity jurisdiction over any asserted class action that: (1) includes at least one class member whose citizenship is diverse from that of the defendant; (2)

would have at least 100 putative class members; and (3) involves an aggregate amount in controversy of $5,000,000 or more. *See* 28 U.S.C. § 1332(d)(2), (d)(5)-(6). Each requirement is satisfied here.

**1. The Minimal Diversity Requirement Is Satisfied.**

18. For purposes of CAFA diversity jurisdiction, limited liability companies and other unincorporated associations are deemed citizens of the state(s) where they have their "principal place of business" and "under whose laws [they are] organized." 28 U.S.C. § 1332(d)(10); *City of East St. Louis, Ill. v. Netflix, Inc.*, 83 F.4th 1066, 1071 (7th Cir. 2023). As Plaintiffs allege, NIPSCO is an Indiana limited liability company with its headquarters in Indiana (Ex. 1 ¶ 7), making it an Indiana citizen for CAFA purposes.

19. The Proposed Class is defined by "Indiana residents," not Indiana citizens. Because "a person may reside one place but have his domicil in another," *State ex rel. Flaugher v. Rogers*, 77 N.E.2d 594, 595 (Ind. 1948), *In re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) ("being a resident isn't the same thing as being a citizen, that is to say, a domiciliary"), the Proposed Class will include foreign citizens including "out-of-state companies," *In re Sprint*, 593 F.3d at 674, part-time residents such as "college students from other states," *id.* at 673, and persons who were domiciled in Indiana during the two-year class period "but have since moved to another state." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021).

20. Accordingly, there is a "reasonable probability," from the face of the class definition itself, that at least one member of the Proposed Class is a citizen of a state other than Indiana, satisfying CAFA's minimal diversity requirement in 28 U.S.C. § 1332(d)(2)(A). *McMorris v. TJX Companies, Inc.*, 493 F. Supp. 2d 158, 162 (D. Mass. 2007).

21. For example, the August 2026 outages affected the University of Notre Dame, Purdue University, Valparaiso University, Indiana University Northwest, and other colleges and universities, which reportedly have well over 10,000 students per year from other states, and Plaintiffs' class allegations span three schoolyears. Ex. 1 ¶ 12.

22. As another example, of NIPSCO's business customers in the affected region, hundreds are foreign companies that are headquartered and incorporated or organized in other states.

23. As yet another example, Plaintiff Teresa Baron is a NIPSCO customer in Chesterton, Indiana, but she has resided in Bridgeview, Illinois, and has an Illinois telephone number. She is also registered to vote, and therefore is or has been domiciled, in Illinois, not Indiana. *See* Ex. 3 (redacted).

24. NIPSCO has attached a Declaration that further confirms minimal diversity exists. *See* Ex. 4. The declarant is a NIPSCO customer with a residence in Indiana that lost power during the storms in August 2026. *Id.* ¶¶ 2, 5. The declarant is domiciled in Illinois, however, and has long been a citizen of that state. *Id.* ¶ 4. Since he is a citizen of a state different from Indiana (NIPSCO's state of citizenship under CAFA), minimal diversity is confirmed.

**2. CAFA's Asserted Class Size Requirement Is Satisfied.**

25. Plaintiffs allege the Proposed Class is comprised of "several hundred thousand individuals." Ex. 1 ¶¶ 14, 25 (the August 11, 2026, derecho system alone allegedly affected "317,000 NIPSCO customers"); Ex. 2 at 31 ¶ 8(a) (there are "several hundred thousand likely claimants" in the Proposed Class).

26. Accepting those allegations as true solely for purposes of removal, CAFA's 100-member minimum class size requirement in 28 U.S.C. § 1332 (d)(5)(B) is plainly satisfied. *See Roppo v. Travelers Com. Ins. Co.,* 869 F.3d 568, 581–82 (7th Cir. 2017) ("Travelers may rely on the

estimate of the class number set forth in the complaint."); *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854–55 (7th Cir. 2022) ("Ciox was entitled to take at face value the complaint's allegation of 'several thousand' class members . . .").

**3. The Asserted Class Claims Place More Than $5,000,000 In Controversy.**

27. The Proposed Class claims asserted in the Class Action Complaint raise matters in controversy that "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d)(6).

28. NIPSCO certainly disputes that Plaintiffs have stated viable claims for damages allegedly owed to Plaintiffs or the Proposed Class. But what matters to the jurisdictional inquiry is the amount the class conceivably *could* recover assuming Plaintiffs succeeded in this suit. *See, e.g., Dart Cherokee*, 135 S. Ct. at 554; *Keeling v. Esurance Ins. Co*., 660 F.3d 273, 274-75 (7th Cir. 2011).

29. Estimating the amount in controversy "is not nuclear science" and "does not demand decimal-point precision," especially where, as detailed below, the dollar amounts involved are particularly large. *S. Fla. Wellness, Inc. v. Allstate Ins. Co*., 745 F.3d 1312, 1316 (11th Cir. 2014). As the removing defendant, NIPSCO's estimate of the stakes "controls unless a recovery that large is legally impossible." *Back Doctors Ltd. v. Metropolitan Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

30. Plaintiffs allege there are "several" hundred thousand class members, with at least "317,000" class members from the alleged August 11, 2026, derecho system outages alone. Ex. 1 ¶¶ 14, 25; Ex. 2 at 31 ¶ 8(a). If there are at least 300,000 putative class members, each plaintiff would need to put only $16 in controversy to reach CAFA's $5,000,000 amount-in-controversy

requirement. Plaintiffs' asserted class clams place far more than that sum in controversy for three reasons.

31. *First*, Plaintiffs seek individualized damages for the "physical and/or emotional pain and mental suffering" to each class member from the alleged "negligent and/or willful and wanton acts or omissions of NIPSCO causing the outages." Ex. 1 ¶ 28. Plaintiff Tipold, for example, alleges that he suffered pain from an individual outage at an allegedly different customer location that "forced the termination" of his oral surgery and "his discharge without adequate pan control" (*id.* ¶ 26), which he claims is "typical" of the individual physical and emotional pain and mental suffering allegedly suffered by other class members (*id.* ¶ 16).[3]

32. Juries have awarded thousands of dollars in damages to compensate individual plaintiffs for pain and suffering from allegedly delayed medical care. *See Armour v. Tchaptchet,* No. 2:17 CV 50, 2022 WL 500554, at *11, n. 6 (N.D. Ind. Feb. 18, 2022) (citing jury awards of $3,000 to $140,000 for pain and suffering to inmates who received delayed medical treatment). If a jury were to award asserted class members each just $1,000 in compensatory damages on this type of claim (which is disputed), the amount placed in controversy by the alleged class would exceed $100 million in the aggregate.

33. *Second*, Plaintiffs seek damages for any individual "economic loss" to asserted class members, including in the form of individualized lost "perishable household goods" during outages. Ex. 1 ¶ 27. In the attached Declaration, the declarant describes replacing over $40 worth of food in his refrigerator and freezer when he lost power from NIPSCO during the August 2026

[3] Plaintiffs' counsel has also made representations of other example "physical and emotional" alleged damages, such as exacerbated asthma, anxiety, stress, and individual "harms" allegedly "caused to all of us for the past two years" in "Northwest Indiana." *See* WGN TV, *Class-action lawsuit filed against NIPSCO*, *available at* www.facebook.com/WGNTV/videos/class-action-lawsuit-filed-against-nipsco/1090989929921997/.

outages. If his individual loss is similar to that of 300,000 putative class members, as estimated by Plaintiffs, the amount placed in controversy by this claim would exceed $12 million.[4]

34. *Third*, Plaintiffs seek punitive damages, Ex. 1 at 10 (prayer for relief), which is disputed but must "factor into the amount-in-controversy calculation." *Roppo*, 869 F.3d at 582; *Schutte*, 28 F.4th at 855 (it is "well-settled" that punitive damages are part of the amount in controversy). Punitive damages can be many times the amount of any compensatory damages, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-18 (2003), making it even more apparent that more than $5 million is in controversy.

35. Accordingly, NIPSCO has shown that the amount in controversy here exceeds the CAFA $5,000,000 aggregate damages threshold, and that all prerequisites for CAFA jurisdiction have been met.

### C. This Court Also Has Subject Matter Jurisdiction Over This Action Under Federal Enclave Jurisdiction.

36. This Court also has federal enclave jurisdiction over this action because the claims for damages alleged arose, in part, on federal enclaves. *See Brookhaven Sci. Assocs., LLC v. Donaldson*, No. 04 Civ. 4013(LAP), 2007 WL 2319141, at *5 (S.D.N.Y. Aug. 9, 2007) ("A federal enclave is a portion of land over which the United States government exercises federal legislative jurisdiction." (internal marks omitted)). To that extent, the claims are subject to this Court's

---

[4] As above, Plaintiffs' counsel has made representations of other example "economic" alleged losses, such as food spoilage, flooded basements, traffic light outages and delays, store outages and closures, property damage, lost work and opportunities, inconveniences, and individual losses allegedly to "all" residents in "Northwest Indiana." *See* WGN TV, *Class-action lawsuit filed against NIPSCO*, *available at* www.facebook.com/WGNTV/videos/class-action-lawsuit-filed-against-nipsco/1090989929921997/; Allen Law Group, *A Porter County woman, whose emergency surgery was delayed due to NIPSCO's power outage, has filed a class action lawsuit*, https://www.facebook.com/watch/?v=3535222446642152.

original jurisdiction under 28 U.S.C. § 1331. This action is therefore independently removable under 28 U.S.C. § 1441(a).

37. The Constitution confers on Congress the power "[t]o exercise exclusive legislation" over the District of Columbia "and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings." U.S. Const. art. I, § 8, cl. 17. "It has long been settled that where lands for such a purpose are purchased by the United States with the consent of the State legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

38. Because the United States exercises authority over a federal enclave, federal law governs the enclave, although federal law may incorporate state law. *See, e.g.*, *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952) ("[A]ny law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law"); *Macomber v. Bose*, 401 F.2d 545, 546 (9th Cir. 1968) ("State law theretofore applicable within the [ceded] area was assimilated as federal law, to remain in effect until changed by Congress. Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction."); *Brookhaven Sci. Assocs.*, 2007 WL 2319141, at *5 ("[W]hen an area becomes a federal enclave, the state law in effect at the time of cession becomes federal law and is the applicable law unless Congress provides otherwise.").

39. Thus, federal courts have federal-question jurisdiction under 28 U.S.C. § 1331 as to actions involving alleged tort claims or damages that arise, in whole or in part, on federal enclaves. *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts

have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998). It naturally follows that such actions, if filed in state court, may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g., Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012); *Fuller v. Tenn. Valley Auth.*, 2007 WL 2077639, at *2 (E.D. Tenn. 2007).

40. The "key factor" in determining whether federal enclave jurisdiction exists "is the location of the plaintiff's injury or where the specific cause of action arose." *Sparling v. Doyle*, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014). Federal enclave jurisdiction exists even if only some of the alleged events or damages occurred on a federal enclave. *Durham*, 445 F.3d at 1250 ("some of [plaintiff's] claims arose on federal enclaves"); *Bell v. Arvin Meritor, Inc.*, 2012 WL 1110001, at *2 (N.D. Cal. Apr. 2, 2012) ("at least some of these locations … are federal enclaves"); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1336 (N.D. Ala. 2010) ("some of the events alleged … occurred on a federal enclave"). Plaintiffs' "[f]ailure to indicate the federal enclave status and the location of the exposure will not shield [them] from the consequences" of "federal enclave status." *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992).

41. Here, dozens of federal enclaves are at issue in Plaintiffs' sweeping class allegations. Plaintiffs assert *any* harm from *any* disruption or outage over *more than two years*, since August 17, 2024 (Ex. 1 ¶¶ 12, 27-28), which would allegedly include persons delayed, denied, inconvenienced, lost work or opportunities, or otherwise harmed (*see* above nn. 3–4) at post office, courthouse, Defense, Homeland Security, Veterans Affairs, park, and other federal enclaves in Northern Indiana. *See* U.S. Gen. Servs. Admin., *Inventory Report on Jurisdictional Status of Federal Areas within the States as of June 30, 1962*, at Code Key and pp. 236–55 (1964), *available at* https://publiclandjurisdiction.com/wp-content/uploads/2020/01/JURISD1.pdf (listing enclaves

in NIPSCO's service territory in Indiana with "exclusive jurisdiction [of] the Federal Government" and "the State . . . has not reserved to itself the right to exercise any of the authority concurrently with the United States"); U.S. Gen. Servs. Admin., *Federal Real Property Profile Management System (FRPP MS)*, *available at* www.gsa.gov/policy-regulations/policy/real-property-policy-division-overview/asset-management/federal-real-property-profile-frpp (relisting with current data).

42. Because Plaintiffs' far-reaching alleged claims or damages arose in part on one or more federal enclaves, this Court has original jurisdiction over this action, and removal of this action is proper under 28 U.S.C. § 1441(a) and this Court's "virtually unflagging obligation" to exercise the jurisdiction given to it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

**WHEREFORE**, NIPSCO hereby removes this civil action from the Porter County Superior Court 1 in Porter County, Indiana to the United States District Court for the Northern District of Indiana, Hammond Division.

Dated: September 25, 2026

Respectfully submitted,

*<u>/s/ Brian O. Watson</u>*
Brian O. Watson (36350-45)
Rodney Perry (40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the ECF system and has been served on all counsel of record by electronic means.

*/s/ Brian O. Watson*
Brian O. Watson (36350-45)