**UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JACK TIPOLD, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, individually and on behalf of all others similarly situated, | ) | Case No. 2:26-cv-00459-PPS-JEM |
| Plaintiffs, | ) | CASE BELOW:<br>Porter Superior Court 1<br>Porter County, Indiana<br>Cause No. 64D01-2608-CT-009189 |
| v. | ) | |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION TO REMAND**

Plaintiff, JACK TIPOLD ("JACK"), individually and on behalf of all others similarly situated, including MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY ("Co-Plaintiffs") (collectively, "Plaintiffs"), by counsel, ALLEN LAW GROUP, LLC, pursuant to 28 U.S.C. § 1447(c), hereby respectfully request the

Court to remand this cause to the Porter Superior Court, Porter County, Indiana. In support of this motion, Plaintiffs respectfully state as follows:

## I. INTRODUCTION

1. Plaintiffs filed their First Amended Complaint – Class Action Complaint [DE 5] in state court on August 18, 2026, against Defendant, Northern Indiana Public Service Company, LLC ("NIPSCO"). The action was brought on their own behalf and behalf of a class of those similarly situated pursuant to Rule 23 of Indiana's Rules of Trial Procedure.

2. The proposed class was defined in Plaintiffs' First Amended Complaint – Class Action Complaint as:

> All Indiana residents who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to disruption of electrical service and widespread power outage on and after August 17, 2024.

(DE 5 at ¶12).

3. Specifically excluded from the Class are non-residents of Indiana as well as NIPSCO's officers, directors, trustees, upper management, and other related and subordinate entities controlled by NIPSCO, as well as the judge assigned to this action, and any member of the judge's immediate family. (DE 5 at ¶ 13).

4. Plaintiffs anticipate that this putative class will be further refined into specific subclasses based upon timing and location of outages as well as categories of damages sustained after discovery is taken.

5. On September 9, 2026, Plaintiffs filed a Motion for Preliminary Certification as Class Action [DE 6] in the state court. The state court set that motion for a hearing on October 1, 2026. Prior to that hearing, however, NIPSCO filed its Notice of Removal [DE 1] on September 25, 2026.

6. Pursuant to 28 U.S.C. § 1447(c), Plaintiffs have thirty (30) days after the filing of the Notice of Removal in which to file a motion to remand. Accordingly, Plaintiffs' Motion to Remand is timely made

## II. ARGUMENT

7. NIPSCO alleges that removal of this case from state court is appropriate under two bases: the Class Action Fairness Act and Federal Enclave Jurisdiction. (DE 1 at pp. 5, 10.) Neither supports removal.

8. "Policing the border of federal jurisdiction is a necessity in any system having both limited (national) and general (state) courts." *Pratt Cent. Park Ltd. Partnership v. Dames & Moore*, 60 F.3d 350, 352 (7th Cir. 1995). "Set the barriers to federal adjudication too low, and the distinction collapses—for lawyers have a remarkable ability to propose improbable contentions with poker faces." *Id.*

9. As such, "[c]ourts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). "Any doubt regarding jurisdiction should be resolved in favor of the states." *Id.* "Federal courts are courts of limited jurisdiction: 'It is to be presumed that

a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).

10. Thus, "[t]he party invoking federal jurisdiction bears the burden of demonstrating its existence." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012). A defendant must show removal is justified by a preponderance of the evidence. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993). This is "proof to a reasonable probability that jurisdiction exists." *Id.* The Seventh Circuit requires this burden be met with "competent proof." *Chase v. Shop 'N Save Warehouse Foods*, 110 F.3d 424, 427 (7th Cir. 1997).

11. As more fully set forth below, NIPSCO fails to meet its burden to show even minimal diversity under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). CAFA also contains two express exceptions that apply here.

12. Additionally, NIPSCO grossly overstates the scope of Federal Enclave Jurisdiction. NIPSCO's approach to Federal Enclave Jurisdiction would mean that no class action could ever be filed in state court if any injury—no matter how infinitesimal a percentage of the aggregate class—occurred on a Federal enclave. This is not the law.

13. Finally, on October 1, 2026, Plaintiffs filed a Motion for Leave to Amend First Amended Complaint [DE 9], which, if granted, would eliminate any possibility of Federal jurisdiction over this Indiana-focused class action.

**A. NIPSCO failed to meet its burden to show even minimal diversity under the Class Action Fairness Act.**

14. NIPSCO points to CAFA as the basis for this Court having diversity jurisdiction. (DE 1 at pp. 5–6). Subsection (d)(2) of CAFA vests jurisdiction in U.S. district courts in class actions even when there is only minimal diversity. *Id.*

15. NIPSCO concedes, for purposes of assessing diversity jurisdiction under CAFA, that it is an Indiana citizen. (DE 1 at p. 6). NIPSCO also concedes, for purposes of assessing diversity jurisdiction under CAFA, that the class of potential plaintiffs in this action numbers in the hundreds of thousands. (DE 1 at p. 7). NIPSCO further admits that over three hundred thousand plaintiffs might qualify just from one of NIPSCO's many power outages.

16. In support of its assertion that there is minimal diversity in this case, NIPSCO argues there is a reasonable probability that at least one of those potential plaintiffs is not an Indiana citizen, and identifies:

- Two individuals whom NIPSCO claims are Indiana residents but are or might be Illinois citizens;
- An unsupported hypothetical universe of businesses, without specificity, who might be headquartered, incorporated, or organized in other states but operate in northwest Indiana; and

- An unsupported hypothetical universe of out-of-state students at various institutions of higher education in Northwest Indiana.

(DE 1 at pp. 6–7).

17. NIPSCO's "competent proof" amounts to counsel's statements about Indiana businesses and out-of-state college students; an affidavit from an individual who is not a plaintiff in this case; and the purported voter registration of a person named Teresa Baron that NIPSCO claims is the same Teresa Baron who is a named plaintiff in this matter.

18. This mix of improbable and conclusory contentions, supposition, and unsupported allegations do not satisfy the "competent proof" requirement. *Cf. America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1027, 1074 (7th Cir. 1992) (when proving diversity, allegations based on simply information and believe are insufficient to constitute proof). And when all doubts regarding jurisdiction in this matter must be resolved in favor of Indiana's jurisdictional power, it is apparent that removal is inappropriate under CAFA.

**B. Even if NIPSCO met its burden as to minimal diversity, CAFA's local controversy and home state exceptions require remand.**

19. NIPSCO only identifies one component of CAFA: its "minimal diversity" provision for class actions. CAFA, however, "is not complete without its exceptions." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011). Two exceptions, the

"local controversy" and "home state" exceptions, compel a district court to decline jurisdiction. *See id.* at 570.

20. The local controversy exception provides:

> (4) A district court shall decline to exercise jurisdiction under paragraph (2)—
> (A)
> (i) over a class action in which—
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant—
> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same persons;

28 U.S.C. § 1332(d)(4)(A).

21. The home state exception provides:

> (4) A district court shall decline to exercise jurisdiction under paragraph (2)—
>
> * * *
>
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B).

22. In other words, the home state exception requires district courts to decline jurisdiction "where two-thirds or more of the members of the proposed plaintiff class and the primary defendants are citizens of the original filing state." *Hart* 457 F.3d at 679 (citing 28 U.S.C. § 1332(d)(4)(B)). And the local controversy exception likewise compels district courts to decline jurisdiction when

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the original filing state; (2) at least one defendant is a defendant from whom members of the proposed plaintiff class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and is a citizen of the original filing state; (3) the principal injuries were incurred in the original filing state; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the case.

*Id.* (citing 28 U.S.C. § 1332(d)(4)(B)).

23. "These two exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases where the controversy is strongly linked to that state." *Id.* at 682. Assuming a defendant proves removal is appropriate under CAFA, it is then the plaintiff's burden to show that one of these exceptions applies. *Id.* at 676. CAFA then "commands the district courts to decline jurisdiction under paragraph 2 when either the 'local' or 'home state factors' are present." *Id.* at 680.

24. NIPSCO is attempting to make this case into something it is clearly not. It is unequivocal that this case is not "genuinely national litigation" and instead "the

controversy is strongly linked" to Indiana. Both of the home state and local controversy exceptions are satisfied here, and the Court must decline to exercise jurisdiction over this case.

25. For starters, NIPSCO is an Indiana citizen. It is the sole defendant in this case and its failure to perform adequate vegetation management forms the basis for Plaintiffs' claims. Thus, under the home state exception, the primary defendant here is an Indiana citizen.

26. For purposes of the local controversy exception, at least one defendant from whom the plaintiff class seeks significant relief and whose alleged conduct forms a significant basis of the asserted claims is an Indiana citizen. Additionally, for purposes of the local controversy exception, the principal injuries—personal and economic injuries incurred by the class members because of NIPSCO's preventable power outages—occurred in Indiana. And there have been no other class actions asserting the same or similar factual allegations against NIPSCO in the last three years.

27. The common remaining element for these exceptions is the threshold quantity of potential class members—two-thirds—which are Indiana citizens. The numbers clearly show that this element is satisfied. Hundreds of thousands of NIPSCO customers were without power during just the most recent mass outage. The exact numbers range from the low-end 317,000 alleged in Plaintiffs' complaint to NIPSCO's

own admissions that are closer to 375,000.[1] If a reasonable middle ground is 350,000, one-third of that number would be approximately 120,000 individuals.

28. In other words, unless NIPSCO's two purported Illinois citizens, plus its phantom quantities of students and businesses, add up to more than 120,000 putative class members, the home state and local controversy thresholds would be met.

29. NIPSCO makes no attempt to enumerate how many foreign-organized/incorporated businesses might have been impacted by its outages. But there are 724,758 businesses active across the entire state of Indiana.[2] 95,847 of those businesses were opened in 2025, and 87,552 of those new businesses—or 91.35%—are domestic businesses.[3] Taking that percentage as a reasonable measure and applying it to the total active businesses in the state means a maximum of 62,691 business across all of Indiana would be out-of-state businesses.

30. NIPSCO's service area, though, only covers 30 of Indiana's 92 counties—and of those 30, only portions of 22 are covered by its electric service.[4] There is no reason to believe that anywhere close to all of the 62,000 out-of-state businesses operating across

---

[1] *See, e.g.*, "Indiana Gov. Mike Braun criticizes NIPSCO over ongoing outages; more than 10K remain without power,"WGN-9 News, *available at*: https://wgntv.com/northwest-indiana/nipscos-latest-outage-numbers-gary-mayor-provides-update-at-wgn/ ("NIPSCO said that 374,500 outages were reported throughout the series of storms over multiple days.").

[2] *See* https://inbiz.in.gov/Inbiz/BusinessStatistics/Index.

[3] *See id.* (select "Jan-Dec 2025.").

[4] *See* https://www.nipsco.com/our-company/about-us.

Indiana are potential plaintiffs when NIPSCO only provides service in parts of 24% of Indiana's counties.

31. Additionally, NIPSCO hypothesizes—without any evidentiary support—that the August 11, 2026, storm might have impacted 10,000 students (each) at the major institutions of higher education in northwest Indiana. However:

- Purdue University was on an academic break from August 7 to August 26.[5] And Tippecanoe County, where Purdue is located, is not even in NIPSCO's service area.

- Valparaiso University was on an academic break from August 7 to August 26.[6]

- The University of Notre Dame runs a six-week summer session beginning in early June and concluding in mid-July, with its fall academic calendar not starting again until August 24.[7] Additionally, Notre Dame generates half of its electrical power needs from its own power plant and the other half comes from Indiana Michigan Power.[8] It does not get power from NIPSCO.

- IU Northwest's summer session concluded on August 14, 2026, and its fall 2026 term began on August 24.[9] So, in theory, some of its students might have been on campus. But IU-Northwest's total student population is only 3,500.[10]

---

[5] *See* https://www.purdue.edu/registrar/calendars/academic-archive/ (Summer 2026 schedule); https://www.purdue.edu/registrar/calendars/academic/ (Fall 2026 schedule).

[6] *See* https://catalog.valpo.edu/content.php?catoid=15&navoid=687.

[7] *See* https://summersession.nd.edu/calendar/session-dates/ (Summer 2027 schedule example); https://registrar.nd.edu/calendars/ (Fall 2026 schedule)

[8] *See* https://m.nd.edu/notredame/sustainability/_/power_plant.

[9] *See* https://ues.iu.edu/registrar/student-records/academic_calendar/index.html.

[10] *See* https://northwest.iu.edu/about/index.html.

There is, therefore, no credible evidence supporting NIPSCO's assertion that 10,000 out-of-state students per institution were impacted by even the August 11, 2026, storm.[11] In fact, the evidence militates in the opposite direction.

32. In sum, this is a class action where more than two-thirds of the proposed class members and the primary defendant are Indiana citizens. The home state exception to CAFA therefore applies.

33. Additionally, this is a class action in which (1) more than two-thirds of the members of the proposed plaintiff class are clearly citizens of Indiana; (2) NIPSCO is the sole defendant from whom members of the proposed plaintiff class seek the entirety of their relief and whose alleged misconduct forms the basis of the asserted claims, and NIPSCO is a citizen of Indiana; (3) the principal injuries were incurred in Indiana; and (4) no other class action asserting the same or similar factual allegations has been filed against NIPSCO within the three years preceding the filing of the case. The local controversy exception to CAFA is also applicable.

34. Based on the foregoing facts, this Court should decline to exercise jurisdiction over this matter pursuant to the above-discussed express statutory exceptions contained within CAFA.

---

[11] NIPSCO makes no parallel assertion for any specific outages prior to August 2026, so its attempt to extend its imaginary number for "three schoolyears" has no basis in fact whatsoever.

**C. Federal Enclave Jurisdiction does not justify removal.**

35. Federal Enclave Jurisdiction is not distinctly statutory. It derives from application of the U.S. Constitution's language that the United States has authority "[t]o exercise Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be." U.S. Const. art. I, § 8, cl. 17. Federal Enclave Jurisdiction is thus an exercise of a district court's original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

36. "The federal enclave doctrine renders certain state and common law claims inapplicable within areas of land ceded by a state to the federal government (e.g., military bases, national parks, post offices, and federal courthouses)." *Rendelman v. Sproul*, 2021 U.S. Dist. Lexis 143543 *6 (S.D. Ill. Aug. 2, 2021). "State-law actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction." *City of Evanston v. Monsanto Co.*, 720 F. Supp. 3d 642, 647 (N.D. Ill. 2024) (quoting *Bd. of Cnty. Commissioners of Boulder Cnty. V. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1271 (10th Cir. 2022) (emphasis added)). But removal is not absolute, and it is unjustified in this case.

37. "As the dearth of case law illustrates, courts have relied on this 'federal enclave' theory to exercise federal question jurisdiction in limited circumstances.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 565 (D. Md. 2019). There is a high bar for it to apply, though, and NIPSCO fails to clear it.

38. "Courts have held that federal enclave jurisdiction 'generally requires that **all pertinent events take place on a federal enclave**.'" *City of Evanston*, 720 F. Supp. 3d at 647 (quoting *Suncor*, 25 F.4th at 1271) (emphasis added); *see also BP P.L.C.*, 388 F. Supp. 3d at 565 ("Specifically, courts have only found that claims arise on federal enclaves, and thus fall within federal question jurisdiction, **when all or most of the pertinent events occurred there**." (emphasis added)). "A claim must allege that an injury occurred on a federal enclave or that an injury stemmed from conduct on a federal enclave." *City of Evanston*, 720 F. Supp. 3d at 647 (quoting *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1111 (9th Cir. 2022)). "Additionally, 'the connection between injuries and conduct must not be too attenuated and remote.'" *Id.* (quoting *Sunoco*, 39 F.4th at 1111).

39. In other words, Federal Enclave Jurisdiction does not exist in this case simply because **some** activities—whether a few plaintiffs' injuries or some of NIPSCO's misconduct—occurred in federal enclaves. "Again, federal-question jurisdiction tied to federal enclaves 'generally requires that all pertinent events t[ake] place on a federal enclave.'" *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 219 (4th Cir. 2022) (quoting *Suncor*, 25 F.4th at 1271).

40. At most, NIPSCO's removal notice alleges a *de minimis*, hypothetical geographic overlap between some potential members of the plaintiffs' class in this case and the federal enclaves situated in northern Indiana.

41. The allegations in this case are that NIPSCO failed to perform adequate vegetation management along, and in proximity to, its power transmission and distribution lines, and the resulting power outages caused personal and/or pecuniary injury to members of the class. NIPSCO makes no argument whatsoever (nor does it present any evidence in its removal notice) that these transmission lines, distribution lines, or the vegetation at issue ran through, along, or over any federal enclaves. NIPSCO identifies no specific federal enclaves directly impacted by any particular outage; it merely shows that there are federal enclaves within NIPSCO's service area. NIPSCO does not assert that any pertinent events took place on a federal enclave, much less "all or most." Indeed, NIPSCO simply asserts is that **some** injuries of **some** class members **might** include being delayed, denied, inconvenienced, or losing work or opportunities at a federal enclave in its service area.

42. This is not "competent proof" to justify the court's exercise of jurisdiction. NIPSCO's attempt to invoke Federal Enclave Jurisdiction is pure supposition insufficient to justify removal. Even if NIPSCO's claims prove true through the discovery process, such a narrow, limited scope does not justify the wholesale removal of a state court action into federal court when the overwhelming majority of the injuries—and all of NIPSCO's misconduct—occurred outside of any federal enclaves. Once again, NIPSCO is trying to make this case out to be something it is not.

**D. Plaintiffs' proposed Second Amended Complaint eliminates Federal jurisdictional anchors.**

43. As Plaintiffs' motion for leave to amend their First Amended Complaint makes clear, leave should be granted to amend their complaint to address NIPSCO's jurisdictional anchors. Though Plaintiffs believe NIPSCO's asserted jurisdictional grounds for removal are without merit, this amendment eliminates them for good. No prejudice comes to NIPSCO from this amendment; it in fact limits the scope of the class from which it will face claims and thus is to NIPSCO's potential benefit. The amendment is not being made for the purpose of undue delay; it is being made promptly, before NIPSCO has even filed its answer. And the amendment is not made for any reasons of bad faith or dilatory motives; as set forth below, the U.S. Supreme Court has held that these sorts of amendments are permissible to eliminate federal jurisdictional anchors on what are otherwise matters exclusively of state law.

44. As set forth below, the U.S. Supreme Court has held that an amended complaint, post-removal, can eliminate federal jurisdictional anchors and compel remand of a case to state court.

45. In *Royal Canin U.S.A., Inc. v. Wullschleger*, the U.S. Supreme Court resolved the split in the federal Courts of Appeals about whether a plaintiff could amend their complaint post-removal to eliminate grounds for federal jurisdiction and thereby drive a remand to state court. 604 U.S. 22, 30 (2025). The U.S. Supreme Court concluded plaintiffs could do just that: "When a plaintiff amends her complaint following her suit's removal,

a federal court's jurisdiction depends on what the new complaint says." *Id.* For purposes of determining jurisdiction, the amended complaint "has become the operative one." *Id.*

46. This approach dovetails with Congressional approaches to district courts' limited jurisdiction. *Id.* at 34. Moreover, "[t]he plaintiff is 'the master of the complaint,' and therefore controls much about her suit." *Id.* at 35 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). "She gets to determine which substantive claims to bring against which defendants." *Id.* This control means the plaintiff "can establish—or not—the basis for a federal court's subject-matter jurisdiction." *Id.* The plaintiff can target only defendants from different states, for example, or destroy diversity jurisdiction by adding one from the plaintiff's home state; the plaintiff can similarly choose to plead federal claims or state-only claims. *Id.*

47. "[T]he plaintiff's control over those matters extends beyond the time her first complaint is filed." *Id.* An amended complaint supersedes the old one; the prior complaint has no further function relative to the case. *Id.* "So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: **The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction**." *Id.* at 35–36 (emphasis added).

48. "Similar rules have long applied in the removal context." *Id.* at 37. Whether a plaintiff later asserts a federal claim to create federal jurisdiction or joins a non-diverse party to destroy diversity jurisdiction, "[o]nce again, federal jurisdiction—or its

absence—follows from the amended complaint." *Id.* at 38. The appropriateness of federal jurisdiction (or the inappropriateness of that jurisdiction) is not based on where the suit was originally filed—federal or state court—instead, it depends "on the substance of the suit—the legal basis of the claims (federal or state?) and the citizenship of the parties (diverse or not?)." *Id.* at 38–39. "So in a removed no less than in an original case, the rule that jurisdiction follows the operative pleading serves a critical function. It too ensures that the case, as it will actually be litigated, merits a federal forum." *Id*. at 39.

49. "Under those rules," the US Supreme Court concluded, "the presence of jurisdiction, in removed as in original cases, hinges on the amended, now operative pleading. By adding or subtracting claims or parties, and thus reframing the suit, that pleading can alter a federal court's authority." *Id.*

50. Plaintiffs have sought leave to amend their First Amended Complaint to reframe the class as edited below (with a parallel revision of the First Amended Complaint's rhetorical paragraph 11):

> All Indiana ~~residents~~ **citizens** who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to disruption of electrical service and widespread power outage on and after August 17, 2024.

(DE 9 at ¶15).

51. Additionally, Plaintiffs have sought leave to amend their First Amended Complaint to broaden the exemptions from the class as edited below:

> Specifically excluded from the Class are non-~~residents~~ **<u>citizens</u>** of Indiana**<u>;</u>** ~~as well as~~ NIPSCO's officers, directors, trustees, upper management, and other related and subordinate entities controlled by NIPSCO~~,~~**<u>;</u>** ~~as well as~~ the judge assigned to this action, and any member of the judge's immediate family**<u>; Indiana citizens whose personal injury and/or pecuniary harm occurred on a federal enclave</u>**.

(DE 9 at ¶ 17).

52. The proposed Second Amended Complaint's class definition eliminates any diversity amongst the parties; therefore, CAFA would no longer support the exercise of federal jurisdiction. *See Zurbriggen v. Twin Hill Acquisition, Inc.*, 178 F.4th 1081, 1087 (7th Cir. 2026). "*Royal Canin* does not discuss CAFA jurisdiction, but its reasoning is still relevant. A plaintiff who amends his complaint to remove parties needed for minimal diversity, for example, would unquestionably change the basis under CAFA." *Id.*

53. The expanded exclusion of class members similarly eliminates any grounds for Federal Enclave Jurisdiction.

54. The Second Amended Complaint, under *Wullschleger* and *Zurbriggen*, if permitted, would become the operative pleading as to this Court's authority over this case. And the Second Amended Complaint compels remand of this matter to state court.

## III. CONCLUSION

NIPSCO failed in its burden to show that the Court should exercise jurisdiction under the Class Action Fairness Act. And even if NIPSCO succeeded, CAFA's home state and local controversy exceptions apply in this case and require the Court to decline the exercise of jurisdiction. NIPSCO's hypothetical, unsupported claims as to injuries arising

on federal enclaves does not meet the standard that "all or most" of the conduct must occur in those federal enclaves, and so Federal Enclave Jurisdiction is also not grounds for removal of this case from state court. And in either event, the Second Amended Complaint eliminates those federal anchors entirely. As the operative pleading, it would no longer contain any grounds for the exercise of federal jurisdiction.

WHEREFORE, JACK TIPOLD, individually and on behalf of all others similarly situated, and co-plaintiffs, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, and CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, respectfully request the Court issue an order:

(1) Remanding this matter to the Porter Superior Court 1; and

(2) Affording all other relief just and proper in the premises.

Respectfully submitted,

**ALLEN LAW GROUP, LLC**
Attorneys for Plaintiffs

*/s/ Jeffrey L. Lund*

Kenneth J. Allen (3857-45)
Jeffrey L. Lund (22454-49)
501 Allen Court, Suite 3000
Chesterton, IN 46304
(219) 465-6292
kja@allen.law
jlund@allen.law

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2026, I electronically filed the foregoing *Plaintiffs' Motion to Remand*, with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Jeffrey L. Lund*
Jeffrey L. Lund

ALLEN LAW GROUP
INJURY ATTORNEYS
www.Allen.Law

*Reply to Office Indicated*

☑ **ALLEN LAW BUILDING:**
501 Allen Court, Suite 3000
Chesterton, IN 46304
219.465.6292

☐ **MERRILLVILLE OFFICE:**
3700 E. Lincoln Highway (U.S. 30)
Merrillville, IN 46410
219.736.6292

☐ **INDIANAPOLIS OFFICE:**
201 N. Illinois Street (South Tower)
Indianapolis, IN 46204
317.842.6926

☐ **CHICAGO OFFICE:**
77 W. Wacker Drive
Chicago, IL 60601
312.236.6292

☐ **ORLAND PARK OFFICE:**
15255 S. 94th Avenue
Orland Park, IL 60462
708.460.6292

☐ **WILL COUNTY OFFICE:**
10062 W. 190th Place
Mokena, IL 60448
815.725.6292