**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

JACK TIPOLD, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC,

Defendant.

No. 2:26-cv-00459-PPS-JEM

**DEFENDANT NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

Brian O. Watson (36350-45)
Rodney Perry (40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Procedural History ..... 3

II. Plaintiffs' First Amended-Class Action Complaint ..... 4

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. NIPSCO Not Only Satisfied the Minimal Diversity Requirement But Exceeded It With Evidence That Plaintiffs Do Not Rebut. ..... 7

II. Plaintiffs Misstate Their Burden to Prove CAFA's Exceptions and Submit No Evidence to Support Their Guesswork. ..... 9

A. Plaintiffs and Their Counsel's Prior Class Action Lawsuit Forecloses the Local-Controversy Exception. ..... 10

B. Plaintiffs Offer No Evidence That Two-Thirds of the Proposed Class Are Indiana Citizens for the Home-State Exception. ..... 11

III. Federal Enclave Jurisdiction Independently Supports Removal. ..... 13

A. Federal Enclave Jurisdiction Exists Because Plaintiffs' Absent Class Members' Claimed Injuries Arose, in Part, on Federal Enclaves. ..... 13

B. Plaintiffs' Arguments Would Violate, Not Protect, Fundamental Rights. ..... 15

IV. Plaintiffs' Proposed Nonbinding Amendment Cannot Divest this Court of CAFA Jurisdiction. ..... 16

A. Seventh Circuit Precedent Prevents Plaintiffs from Manipulating Their Class Definition to Oust CAFA Jurisdiction. ..... 16

B. The Seventh Circuit Has Not Overruled *In re Burlington*. ..... 17

C. *Royal Canin* Does Not Apply to Plaintiffs' Amendment. ..... 17

D. Allowing Plaintiffs to Divest this Court of CAFA Jurisdiction by Manipulating Class Allegations Would Violate CAFA. ..... 20

CONCLUSION ..... 21

## INTRODUCTION

Plaintiffs' motion to remand this proposed wide-ranging class action—which seeks to represent any Indiana resident who claims any harm from any power outage, no matter the duration, over the past two years, and allegedly from "vegetation management" by Northern Indiana Public Service Company, LLC ("NIPSCO")—should be denied for at least ***four*** reasons.

***Minimal diversity.*** Plaintiffs' lead argument that NIPSCO failed to show minimal diversity rests on cases and mistaken burdens that do not govern here. [DE 14 at 4–6.] The traditional anti-removal presumption that Plaintiffs argue simply does not apply to cases removed under the Class Action Fairness Act ("CAFA").

CAFA requires only a plausible allegation that at least one proposed class member is diverse from at least one defendant. NIPSCO established that fact: NIPSCO is an Indiana citizen under CAFA, and there are putative class members who are citizens of other states. [DE 1 at 6–8.] Though not required, NIPSCO added sworn, record evidence to prove citizenship; Plaintiffs offer nothing to rebut that showing. [DE 1-3, DE 1-4.] On top of that uncontroverted evidence, NIPSCO demonstrated, by reference to controlling Seventh Circuit precedent, that Plaintiffs' proposed class definition sweeps in diverse out-of-state companies, college students from other states, and persons who were domiciled in Indiana during the alleged class period but have since moved to another state. [DE 1 at 8.] Plaintiffs offer no evidence to prove otherwise.

***CAFA exceptions.*** Plaintiffs' motion similarly argues the wrong standards for CAFA's statutory exceptions, trying to avoid and shift their own burden onto NIPSCO. Plaintiffs have not met their burden of proving these exceptions by a preponderance of the evidence. [DE 14 at 6–12.] Yet again they offer none. In addition, these exceptions are narrow because they were not

intended to become "jurisdictional loopholes" for class action plaintiffs to avoid federal court review. Plaintiffs' motion does not come close to proving these narrow exceptions.

As for the local-controversy exception, Plaintiffs' arguments fail out of the gate because their counsel filed an identical class action just three days before filing this suit, while forum and judge shopping in state court. [DE 1 at 2 n.1.] The exception requires that no other class action asserting the same or similar allegations has been filed against any defendant within the past three years. As to the home-state exception, Plaintiffs cannot, and do not, prove that two-thirds or more of their proposed class members are Indiana citizens. That would require an individualized factual inquiry into the citizenship of "several hundred thousand" alleged class members—an inquiry that Plaintiffs have not even attempted, much less proven with evidence, and that cannot be resolved with mere "guesswork." *In re Sprint Nextel Corp.*, 593 F.3d 669, 675–76 (7th Cir. 2010) (vacating remand order where plaintiffs submitted no evidence on citizenship).

***Federal enclave.*** Plaintiffs concede that some of their sprawling claims and alleged damages arose on federal enclaves, such as Post Office, Courthouse, Defense, Homeland Security, Veterans Affairs, Park, and other federal locations. [DE 1 at 10–13; DE 14 at 14.] Yet, rather than protect the interests of their proposed absent class members, Plaintiffs characterize these claims or damages as only "some" or "*de minimis.*" [DE 14 at 14.] But the law asks whether the claims or damages arose, in part, on a federal enclave—not most or all of them. In this class context, Plaintiffs' argument also violates the substantive and procedural rights of both NIPSCO and proposed absent class members.

***Post-hoc nonbinding amendment.*** Under controlling precedent, Plaintiffs' proposed amendment of their class allegations would not oust this Court's federal jurisdiction even if allowed. As the Supreme Court has held, proposed class actions are unique because plaintiffs

have no authority to bind their absent class members, and thus courts should "ignore" nonbinding concessions under CAFA. Plaintiffs' conduct also shows what their amendment is for: they are still pressing certification of their "Indiana residents" proposed class [DE 6], while requesting an amendment here only to "eliminate" federal jurisdiction. [DE 14 at 16–19.] CAFA prohibits these jurisdictional games.

The Court should deny Plaintiffs' motion to remand. [DE 14.]

## BACKGROUND

### I. Procedural History

On August 17, 2026, Plaintiff Tipold originally filed this case in state court, alleging only an individual negligence claim. [DE 4]; *Tipold v. N. Ind. Pub. Serv. Co., LLC*, No. 64D01-2608-CT-009189 (Ind. Super. Ct. 2, Porter County). Later that evening, Plaintiff Tipold filed a First Amended-Class Action Complaint, adding class allegations and additional named Plaintiffs Margaret Shragal, Genell Creal, Wiley Creal, Teresa Baron, Alfred Allen, Latasha Allen, Malaya Gully, Michael Zimmer, William Zabaneh, Carol Norris, Kim Norris, Lawrence Sharon, Dustin Brown, Jennifer Brown, Joshua Brown, and Charles Bray. [DE 5.]

This amendment followed transparent state court forum and judge-shopping. Plaintiff Shragal, represented by the same counsel, filed an earlier class action complaint before a different state court judge on August 14, which they voluntarily dismissed on August 18 in favor of Plaintiff Tipold's suit. *Shragal v. N. Ind. Pub. Serv. Co., LLC*, No. 64D02-2608-CT-009144 (Ind. Super. Ct. 2, Porter County). Plaintiff Creal, again represented by the same counsel, filed a separate case before a different state court the same day as Plaintiff Tipold and then voluntarily dismissed the case. *Creal v. N. Ind. Pub. Serv. Co., LLC*, No. 45D10-2608-CT-000877 (Ind. Super. Ct., Lake County).

In addition, before NIPSCO was required to appear and respond, Plaintiffs moved for preliminary certification of their proposed class in state court. [DE 6.] This Court docketed this pending certification motion upon removal. [*Id.*] Plaintiffs have not withdrawn, and indeed continue to pursue, the motion in this Court. [DE 6, 15, 16.] NIPSCO has addressed the class allegations' facial defects in a concurrently filed opposition to Plaintiffs' motion, which is coupled with a motion to strike those allegations.

NIPSCO removed this case under CAFA, 28 U.S.C. §§ 1332(d), 1453, as well as 28 U.S.C. §§ 1331, 1441, and 1446. [DE 1.] As the notice explains, accepting Plaintiffs' allegations solely for jurisdictional purposes, this alleged class action is properly in this Court both under CAFA jurisdiction—because it meets the statute's minimal diversity, putative class size, and aggregate amount in controversy requirements—and under federal enclave jurisdiction, because the claims or damages alleged arose in part on federal enclaves. [*Id.* at 1–13.]

Six days after removal, Plaintiffs moved for leave to amend. [DE 9.] Their proposed Second Amended Complaint would purport to change the class from one comprised of Indiana "residents" to Indiana "citizens" and exclude "Indiana citizens whose personal injury and/or pecuniary harm occurred or arose on a federal enclave." [*Id.* ¶¶ 15–17.] Plaintiffs' motion openly concedes their purpose: "eliminate" federal jurisdiction. [*Id.* ¶ 10.] Plaintiffs describe the "residents" wording as a supposed "scrivener's error" [*id.* ¶ 13], though these words appear in both the class definition and the class exclusions in Plaintiffs' pleading [DE 5 ¶¶ 12–13], as well as their pending motion for class certification [DE 6 ¶¶ 3–4]. NIPSCO has addressed the errors in Plaintiffs' motion to amend in its concurrently filed opposition.

## II. Plaintiffs' First Amended-Class Action Complaint

Plaintiffs' claims center on NIPSCO's vegetation management, and specifically its obligation to trim trees and manage vegetation consistent with Commission filings and orders.

[DE 5 ¶¶ 2, 12, 20–25.] Plaintiffs allege that "numerous weather events" from August 2024 through August 2026 "caused vegetation ... to fall onto NIPSCO's utility lines," which "culminated" in the August 11, 2026, derecho that "left 317,000 NIPSCO customers without power." [*Id.* ¶¶ 24–25.]

As his own alleged harm, Plaintiff Tipold claims that he was undergoing oral surgery on August 11, when the outages allegedly forced the termination of his procedure. [*Id.* ¶ 26.] He claims that his dental provider "discharge[d] [him] without adequate pain control" and that his "post-operative care was impeded and delayed," allegedly resulting in physical and emotional pain. [*Id.* ¶ 26.] He also claims economic loss from "perishable household goods." [*Id.* ¶ 27.] The other sixteen named Plaintiffs allege that they "similarly" suffered "economic loss, physical and/or emotional pain and mental suffering" from the outages, but provide no facts whatsoever—no injury, no outage, and no harm. [*Id.* ¶ 28.]

For each Plaintiff, the complaint does not contain separate claims or counts. [*Id.* ¶ 22.] Instead, Plaintiffs lump together a single negligence claim, an alternative willful-and-wanton-misconduct theory, seventeen Plaintiffs, and eighteen alleged breaches into one undifferentiated complaint—without identifying which breaches allegedly caused which alleged injuries to which Plaintiffs. [*Id.*] Plaintiffs summarily conclude that NIPSCO breached its "legal, regulatory, contractual, and/or common law duties and obligations" related to vegetation management, proximately causing "personal injury and pecuniary harm." [*Id.* ¶ 26.]

Finally, Plaintiffs append class allegations proposing a class of "[a]ll Indiana residents who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to disruption of electrical service and widespread power outage on and after August 17, 2024." [*Id.* ¶¶ 11–18.]

## LEGAL STANDARD

Plaintiffs' motion to remand relies on the wrong legal standards. CAFA vests district courts with original jurisdiction over class actions with at least 100 proposed members, minimal diversity, and at least $5,000,000 in controversy. 28 U.S.C. § 1332(d)(2), (d)(5); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). Contrary to Plaintiffs' assertions [DE 5 ¶ 9], unlike traditional diversity jurisdiction, "***no antiremoval presumption*** attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added); *Roppo*, 869 F.3d at 578; *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (CAFA "must be implemented according to its terms, rather than in a manner that disfavors removal."); *Millman v. United Techs. Corp.*, No. 1:16-CV-312-PPS-SLC, 2017 WL 1165081, at *5 (N.D. Ind. Mar. 28, 2017) (Simon, J.) ("CAFA does not have the ordinary anti-removal presumption").

Under 28 U.S.C. § 1331, federal courts also have federal-question jurisdiction as to actions involving alleged claims or damages that arise, in whole or in part, on federal enclaves. *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998). These actions may be removed to federal court under 28 U.S.C. § 1441(a). *See, e.g.*, *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1236 (10th Cir. 2012). And federal courts have a "virtually unflagging" obligation to exercise the federal jurisdiction given to them under § 1331. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Plaintiffs also incorrectly contend that NIPSCO had to present evidence upon removal. [DE 5 ¶¶ 10, 17–18.] As the Supreme Court has explained, "a defendant's notice of removal need include only a ***plausible allegation***" that the jurisdictional requirements are met. *Dart*, 574 U.S. at 89 (emphasis added); *id.* at 87 ("Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the 'pleading' requirements for removal' and to clarify that courts should 'apply the same liberal rules to removal allegations that are applied to other matters of pleading.'" (cleaned up; citation omitted)).

After removal, an evidentiary showing is required only if, after the removing party has filed the notice of removal, the opposing party contests or the court questions the allegations. *Id.* at 89. Once the removing party establishes jurisdiction, the party seeking remand bears the burden of proof by a preponderance of the evidence. *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680–81 (7th Cir. 2006); *Millman*, 2017 WL 1165081, at *5.

**ARGUMENT**

**I. NIPSCO Not Only Satisfied the Minimal Diversity Requirement But Exceeded It With Evidence That Plaintiffs Do Not Rebut.**

Plaintiffs' motion contests only one of CAFA's three requirements: minimal diversity. [DE 14 at 5–6.] But their argument depends on a burden that does not apply here, for they insist that NIPSCO had to prove minimal diversity with "competent proof" and that all doubts favor remand. [*Id.* at 3–6 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)).] The cases Plaintiffs cite are all inapt here, as they are ordinary diversity cases, decided years before Congress enacted CAFA. They do not state the CAFA standard, and the Seventh Circuit has rejected these same arguments in the CAFA context.

*Roppo*, 869 F.3d at 578 & n.22; *see also Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) (correcting the "misimpression" that defendant had to submit evidence upon removal).

As noted above, the CAFA standard ***favors*** federal jurisdiction over class actions. For the minimal diversity requirement, the removing party need only identify "at least one class member is diverse from at least one defendant." *Roppo*, 869 F.3d at 578. Then, only when a plaintiff or court contests those allegations must the removing party establish the jurisdictional facts with evidence. *Dart*, 574 U.S. at 88.

NIPSCO has more than met this standard. NIPSCO identified at least one alleged class member who is diverse from NIPSCO. [DE 1 at 6–8.] NIPSCO also already filed evidence with its notice of removal that CAFA did not require. [DE 1-3, 1-4.] That evidence proved that putative class members, including named Plaintiff Baron, are Illinois citizens. Plaintiffs' motion does not rebut that evidence.[1]

NIPSCO also went further with its notice of removal. It showed that Plaintiffs' proposed wide-ranging class includes diverse business customers and out-of-state students, identifying the affected campuses, those schools' reported out-of-state enrollment, and the three school years that Plaintiffs' proposed class period spans. [DE 1 ¶¶ 21–22 (citing *In re Sprint*, 593 F.3d at 673).] NIPSCO's records confirm these allegations that customers in the affected region are headquartered and incorporated or organized in states other than Indiana under CAFA.[2]

---

[1] Plaintiffs offer nothing on Plaintiff Baron's citizenship. Instead, their counsel speculate that the person may not be "the same Teresa Baron who is a named plaintiff in this matter." [DE 14 ¶ 17.] That is insufficient. *Am. Craftsman Contracting, LLC v. Warson Dev., LLC*, 2025 WL 1191073, at *2 (S.D. Ill. Apr. 24, 2025) ("The Court declines Plaintiff's invitation to speculate regarding Schlafly Illinois, LLC's citizenship."). In any event, NIPSCO has one electric customer named Teresa Baron, and her address is, and has been, in Illinois, which matches her voter registration. [DE 1-3; Decl. April Briggs ¶ 4, attached as Ex. 1.]

[2] In Lake County, Indiana, for example (one of the counties affected by the alleged outages here), NIPSCO's out-of-state business customers include Amazon.com Services LLC (headquartered in

Thus, Plaintiffs' motion to remand [DE 14] should be denied because NIPSCO has more than satisfied the contested minimal diversity requirements to establish CAFA jurisdiction.

## II. Plaintiffs Misstate Their Burden to Prove CAFA's Exceptions and Submit No Evidence to Support Their Guesswork.

With CAFA jurisdictional elements met, Plaintiffs turn to the statutory exceptions, again to no avail. [DE 14 at 6–13.] CAFA's exceptions do not "diminish federal jurisdiction." *Millman*, 2017 WL 1165081, at *4 (quoting *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011)). Rather, CAFA's exceptions are "akin to abstention" for declining jurisdiction that already exists. *Id.* (quoting *Morrison*, 649 F.3d at 536). CAFA's exceptions also are "narrow" and "with all doubts resolved 'in favor of exercising jurisdiction over the case[.]'" *Id.* at *5.

Thus, the party seeking to take advantage of these narrow exceptions has the burden of proving that they apply with evidence. *Id.* at *5 (quoting *Hart*, 457 F.3d at 680). That burden is more stringent than the "plausible" standard that governs removal. To invoke a CAFA exception, plaintiffs must satisfy the exception's elements "by a preponderance of the evidence." *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 858 (7th Cir. 2022) (local controversy exception); *In re Sprint*, 593 F.3d at 673 (home-state exception). "Case-processing rules," such as these exceptions, also "may be waived or forfeited" where plaintiffs fail to present evidence proving their application. *See Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014).

Notwithstanding their burden, Plaintiffs offer no evidence to carry it. They submit no declaration, no survey, no document, and no expert analysis about the citizenship of their proposed class. The Court has nothing upon which to base the requested finding. *Sprint*, 593 F.3d

---

Washington and organized in Delaware), BP Products North America Inc. (headquartered in Texas and incorporated in Maryland), Cargill Incorporated (headquartered in Minnesota and incorporated in Delaware), International Paper Company (headquartered in Tennessee and incorporated in New York), and U.S. Steel Corporation (headquartered in Pennsylvania and incorporated in Delaware). [*See* Decl. April Briggs ¶ 5, attached as Ex. 1.]

at 674 (vacating remand order "based on a sense of how the world works, but guesswork nonetheless"). This Court has denied remand on a far stronger showing. *Millman*, 2017 WL 1165081, at *6. Plaintiffs here offer nothing at all, waiving the exceptions.

### A. Plaintiffs and Their Counsel's Prior Class Action Lawsuit Forecloses the Local-Controversy Exception.

Plaintiffs' arguments for the local-controversy exception fail for one obvious and dispositive reason: named Plaintiff Shragal, represented by the same counsel, filed the same class claims against NIPSCO just days before this suit was filed. [DE 1 at 2 n.1.] The exception applies only if, "during the 3-year period preceding the filing of that class action, *no other class action* has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added); *Roppo*, 869 F.3d at 583–84.[3]

Plaintiffs' motion misrepresents that "there have been no other class actions asserting the same or similar factual allegations against NIPSCO in the last three years." [DE 14 ¶ 26.] The record shows otherwise. [DE 1 at 2 n.1]; Compl., *Shragal v. NIPSCO*, No. 64D02-2608-CT-009144 (Ind. Super. Ct. 2, Porter County), attached as Ex. 2. It also makes no difference that Plaintiff Shragal and her counsel voluntarily dismissed their prior class action complaint. Subpart (ii) asks only whether another class action has been "filed" within the preceding three years. 28 U.S.C. § 1332(d)(4)(A)(ii); *Kitson v. Bank of Edwardsville*, 2008 WL 4671743, at *2–3 (S.D. Ill. Oct. 21, 2008) (refusing to apply the exception where plaintiff dismissed and re-filed the suit).

Plaintiffs' inaccurate statement and state court forum and judge-shopping show exactly why, as this Court has explained, CAFA's "local controversy exception is narrow because it was

[3] Plaintiffs' motion misquotes 28 U.S.C. § 1332(d)(4)(A)(ii). *Compare* [DE 14 ¶ 20 ("against any of the defendants on behalf of the same persons")] *with* 28 U.S.C. § 1332(d)(4)(A)(ii) ("against any of the defendants on behalf of the same or other persons").

not intended to become a 'jurisdictional loophole' by which interstate class action can avoid federal court adjudication." *Millman*, 2017 WL 1165081, at *5 (citing S. Rep. 109-14, 39, 2005 U.S.C.C.A.N. 3, 38). The local-controversy exception is off the table.

**B. Plaintiffs Offer No Evidence That Two-Thirds of the Proposed Class Are Indiana Citizens for the Home-State Exception.**

Plaintiffs also fail to meet their burden in proving the home-state exception. Under this exception, Plaintiffs must show by a preponderance of the evidence that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

When, as here, the party seeking remand submits no evidence, the Seventh Circuit has made clear that they do not satisfy their burden. *Sprint*, 593 F.3d at 673–75 (finding plaintiffs did not satisfy their burden when they did not submit "evidence about citizenship" and relied on the "sensible guesswork" of equating cell phone numbers and mailing addresses to citizenship); *see also Myrick*, 764 F.3d at 665 (affirming denial of remand as "plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed. Yet they produced none.").

Plaintiffs' guesswork falls far short of evidence. [DE 14 at 10–12.] For example, rather than offer any competent evidence of citizenship, Plaintiffs cite numbers of residents, business registrations, and outages, and ask the Court to guess their citizenship. [*Id.*] But residence is not citizenship. *Sprint*, 593 F.3d at 673; *Myrick*, 764 F.3d at 664. Business registration is not citizenship either. [DE 14 at 10–12.] And outage numbers are reported by account, not by the number of allegedly affected people and their citizenship, such as Plaintiff Tipold, who claims

harm at his dentist's office. [DE 5 ¶¶ 26–28.][4] The record also confirms how accounts will include multiple proposed class members who are citizens of other states. [DE 1-4.]

Plaintiffs' university guesswork is even thinner. Their proposed class runs from August 17, 2024, to the present, spanning three school years. [DE 5 ¶ 12.] Yet their entire argument about students consists of only whether students were on campus for a few weeks in the summer of 2026. [DE 14 ¶ 31.] They concede that they offer nothing about any alleged outage before August 2026. [*Id.* at 12 n.11.] And they overlook that Purdue University-Northwest is served by NIPSCO, and that their class reaches any Indiana resident with any pecuniary harm, including students at Notre Dame, Purdue University-West Lafayette, and elsewhere, whose schedules were allegedly disrupted outside NIPSCO's electric customer territory. [DE 5 ¶ 12.] One snapshot of one break cannot establish the citizenship of a far-flung class defined across more than three school years. *See Sprint*, 593 F.3d at 673–74.

In fact, this Court has denied remand where the plaintiff's showing was conclusory and her evidence "appear[ed] to tell a different story." *Millman*, 2017 WL 1165081, at *5–6. Plaintiffs here offer less. That choice speaks volumes, likely because establishing the citizenship of proposed class members would require individualized inquiry into each person's domicile—their physical presence and *intent to remain*—requiring evidence for the Court to evaluate the citizenship of hundreds of thousands of proposed class members. *See Sprint*, 593 F.3d at 673–74.

---

[4] As the notice explains (and Plaintiffs do not contest), they and their proposed class counsel claim widespread physical and emotional damages (such as exacerbated asthma, anxiety, stress, and other individual "harms"), as well as economic losses (such as food spoilage, flooded basements, traffic light outages and delays, store outages and closures, property damage, lost work and opportunities, inconveniences, and other individual losses), far beyond customer locations to "all of us for the past two years." *See* WGN TV, *Class-action lawsuit filed against NIPSCO*, *available at* www.youtube.com/watch?v=dGxP_Ks1z9I; Allen Law Group, *A Porter County woman, whose emergency surgery was delayed due to NIPSCO's power outage, has filed a class action lawsuit*, www.facebook.com/watch/?v=3535222446642152.

At bottom, Plaintiffs' motion is precisely the type of "guesswork" that the Seventh Circuit prohibited in *Sprint*. And it underscores why the burden rests on the party seeking remand. If they believed a CAFA exception applied, they had the burden to develop the evidence. They chose not to do so, waiving proof of the exception. Accordingly, because Plaintiffs merely assert without evidence that more than two-thirds of the class are Indiana citizens [DE 14 ¶ 32], the home-state exception cannot support remand. *See Sprint*, 593 F.3d at 673–74.

## III. Federal Enclave Jurisdiction Independently Supports Removal.

Plaintiffs' federal enclave arguments fail for two separate reasons: (1) federal courts have federal-question jurisdiction over claims or damages that arise, in part, on federal enclaves, and (2) Plaintiffs' arguments would violate the substantive and procedural rights of both NIPSCO and proposed absent class members. [DE 14 at 13–15.]

### A. Federal Enclave Jurisdiction Exists Because Plaintiffs' Absent Class Members' Claimed Injuries Arose, in Part, on Federal Enclaves.

Federal enclave jurisdiction exists over this action because Plaintiffs' wide-ranging claims for damages arose, in part, on federal enclaves. *See Durham*, 445 F.3d at 1250; *Akin*, 156 F.3d at 1034. To that extent, the claims are subject to this Court's original jurisdiction under 28 U.S.C. § 1331 and independently removable under 28 U.S.C. § 1441(a). [DE 1 at 10–13.]

The "key factor" in determining whether federal enclave jurisdiction exists "is the location of the plaintiff's injury or where the specific cause of action arose." *Sparling v. Doyle*, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014). Federal enclave jurisdiction exists even if only some of the alleged events or damages occurred on a federal enclave. *Durham*, 445 F.3d at 1250 ("some of [plaintiff's] claims arose on federal enclaves"); *Bell v. Arvin Meritor, Inc.*, 2012 WL 1110001, at *2 (N.D. Cal. Apr. 2, 2012) ("at least some of these locations … are federal enclaves"); *Corley v. Long-Lewis, Inc.*, 688 F. Supp. 2d 1315, 1336 (N.D. Ala. 2010) ("some of

the events alleged … occurred on a federal enclave"). Plaintiffs' "[f]ailure to indicate the federal enclave status and the location of the exposure will not shield [them] from the consequences" of "federal enclave status." *Fung v. Abex Corp.*, 816 F. Supp. 569, 571 (N.D. Cal. 1992).

Plaintiffs' motion does not contest that dozens of federal enclaves fall within their far-flung class allegations. [*Compare* DE 1 at 12 *with* DE 14 at 13–15.] After all, they seek recovery for any claimed harm from any outage at any location of any length and at any time since August 17, 2024. [DE 1 at 2.] That near-limitless claim includes any Indiana resident's claimed delays, inconveniences, or lost work or opportunities at Post Office, Courthouse, Defense, Homeland Security, Veterans Affairs, Park, and other federal enclaves.[5]

Plaintiffs' motion does not engage with any case cited by NIPSCO. [DE 1 at 12–14.] Instead, they claim enclave jurisdiction requires that "all or most of the pertinent events" occur on the enclave [DE 14 ¶ 38] and that there is a "dearth" of case law on the issue [*id.* ¶ 37]. Neither is correct. Courts consistently hold that a case is removable when "some of [plaintiff's] claims arose on federal enclaves." *Durham*, 445 F.3d at 1250, 1252. Plaintiffs' own cited authority supports this standard. [DE 14 at 14 (quoting *City of Evanston v. Monsanto Co.*, 720 F. Supp. 3d 642, 647 (N.D. Ill. 2024) (stating whether "an injury occurred on a federal enclave or that an injury stemmed from conduct on a federal enclave")).]

And unlike the individual plaintiffs in *City of Evanston* and *Mayor & City Council of Baltimore v. BP P.L.C.*, Plaintiffs here assert wide-ranging class claims that include claims and

---

[5] [*See above* at n.4; DE 1 at 10, 12–13 (citing U.S. Gen. Servs. Admin., *Inventory Report on Jurisdictional Status*, at Code Key and pp. 236–55 (1964), *available at* publiclandjurisdiction.com/wp-content/uploads/2020/01/JURISD1.pdf (listing enclaves in Northern Indiana, including in NIPSCO's service territory, with "exclusive jurisdiction [of] the Federal Government" and "the State ... has not reserved to itself the right to exercise any of the authority concurrently with the United States"); U.S. Gen. Servs. Admin., *Federal Real Property*, *available at* frppmap.gsa.gov/frppmap/ (relisting with current data)).]

alleged injuries on federal enclaves. [*Cf.* DE 14 at 14 (citing *Evanston*, 720 F. Supp. 3d at 647 ("Municipalities' complaint does not contain allegations concerning Defendants' conduct at the Naval Station, and the Municipalities expressly disclaimed any damages related to … federal enclaves"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 219 (4th Cir. 2022) ("Baltimore's alleged injuries have not occurred on a federal enclave")].

**B. Plaintiffs' Arguments Would Violate, Not Protect, Fundamental Rights.**

Plaintiffs' "some" or "*de minimis*" standard for not applying federal enclave jurisdiction [DE 14 at 14–15] would also violate the substantive and procedural rights of both NIPSCO and proposed absent class members. Class actions must comply with due process. *See, e.g.*, *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994).

To preserve that due process right, class actions may join individual claims together without changing the substance of what each individual plaintiff must prove. The class device "merely enables a * * * court to adjudicate claims of multiple parties at once, instead of in separate suits," but it otherwise "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 408 (2010). Due process also guarantees NIPSCO "an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (internal quotation marks omitted).

Plaintiffs' argument—that the correct law need not apply to "some injuries" of "some class members"—would violate these fundamental rights. [DE 14 at 14–15] Plaintiffs also cite no class case that would support this rule. [*Id.*] To be sure, Plaintiffs must prove the claims of every class member to establish liability under the applicable law, and NIPSCO has a right to defend itself against the claims of each of the class members, under the correct law. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

## IV. Plaintiffs' Proposed Nonbinding Amendment Cannot Divest this Court of CAFA Jurisdiction.

Plaintiffs' proposed, post-hac nonbinding amendment does not affect this Court's CAFA jurisdiction. That amendment has not been allowed, and would be futile in any event. The Seventh Circuit has squarely held that amending class allegations does not divest a federal court of jurisdiction properly acquired under CAFA. Plaintiffs make no mention of this precedent in their motion. Instead, Plaintiffs rely on the Supreme Court's decision in *Royal Canin* but fail to explain that the decision differentiated between binding amendments changing the parties or claims and amendments merely changing the plaintiff's allegations as here. CAFA also fixes jurisdiction when a suit is filed as a class action, precisely to prevent plaintiffs from manipulating their allegations to divest that jurisdiction in the manner Plaintiffs attempt.

### A. Seventh Circuit Precedent Prevents Plaintiffs from Manipulating Their Class Definition to Oust CAFA Jurisdiction.

In *In re Burlington N. Santa Fe Ry. Co.*, mentioned nowhere in Plaintiffs' motion [DE 14], the Seventh Circuit addressed the very issue presented by their motion: whether CAFA jurisdiction may be ousted by an amendment to the complaint. 606 F.3d 379, 380–81 (7th Cir. 2010). The Seventh Circuit concluded that "allowing plaintiffs to amend away CAFA jurisdiction after removal would present a significant risk of forum manipulation." *Id.* at 381. As the Seventh Circuit explained, CAFA's text and legislative history reflect this concern, stating that CAFA "jurisdiction cannot be 'ousted' by later events," and that if the rule were otherwise, "plaintiffs who believed the tide was turning against them could simply always amend their complaint months (or even years) into the litigation to require remand to state court." *Id.* (quoting S. Rep. No. 109–14, at 70–71 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 66). Accordingly, CAFA jurisdiction "is secure" regardless of how Plaintiffs manipulate their class allegations. *Id.* at 380.

**B. The Seventh Circuit Has Not Overruled *In re Burlington.***

Plaintiffs seemingly take the position that the Supreme Court's decision in *Royal Canin U.S.A., Inc. v. Wullschleger,* 604 U.S. 22 (2025), overruled *In re Burlington.* Not so. As the Seventh Circuit noted in *Zurbriggen v. Twin Hill Acquisition, Inc.*, 178 F.4th 1081, 1087 (7th Cir. 2026), which Plaintiffs rely on [DE 14 at 19], "*Royal Canin* does not discuss CAFA jurisdiction." *Zurbriggen* also expressly declined to find that *In re Burlington* was overruled by *Royal Canin*: "we need not decide whether *In re Burlington* has been directly overruled by *Royal Canin*." *Id.* at 1087 n.3.[6]

As in *Zurbriggen*, "it is not for a lower court to predict when a higher court might overrule its own precedents in light of subsequent cases." *Schindler v. Great Plains Fin., LLC*, No. 24-CV-328-JDP, 2024 WL 4664279, at *2 (W.D. Wis. Nov. 4, 2024); *United States v. Sanders*, No. 2:21-CR-66-PPS-APR, 2025 WL 50371, at *3 (N.D. Ind. Jan. 6, 2025) (the court needs "to be very cautious when reviewing an argument that Seventh Circuit precedent has been supplanted or weakened by a subsequent Supreme Court decision"). *In re Burlington* thus remains binding on this Court, and it requires finding that Plaintiffs' proposed amendment of their class definition would not divest this Court of its CAFA jurisdiction.

**C. *Royal Canin* Does Not Apply to Plaintiffs' Amendment.**

Plaintiffs also overstate the holding in *Royal Canin*, which does not allow plaintiffs to manipulate their way post-removal into one of CAFA's statutory exceptions. *Royal Canin* held that when an individual plaintiff amends away every federal claim after removal, supplemental jurisdiction over the remaining state-law claims goes with them. 604 U.S. at 35–36. It did not

[6] *Zurbriggen* recounted the district court's (not the Seventh Circuit's) view that *In re Burlington* may stand on "thin ice," *id.* at 1088, but again it declined to find the ice had collapsed.

address CAFA jurisdiction or amendments to class allegations, for the simple reason that *Royal Canin* was an individual case, not a class action.

True, the Supreme Court stated: "When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." 604 U.S. at 30. Plaintiffs' amendment, however, would not affect this Court's jurisdiction. As explained above, there remains at least one plaintiff who is diverse from NIPSCO, and at most, it theoretically might affect application of CAFA's home-state exception, which is a question of abstention, not federal jurisdiction. *See Page v. Alliant Credit Union*, 52 F.4th 340, 345 (7th Cir. 2022) ("[A] question of [CAFA] abstention differs from one of subject-matter jurisdiction."); *see also Zurbriggen*, 178 F.4th at 1087 (explaining that *Royal Canin*'s reasoning might apply to amendments that "change the basis for jurisdiction under CAFA").[7]

The Supreme Court also expressly limited its holding in *Royal Canin* to binding amendments that "add or subtract *claims* or *parties*," 604 U.S. at 38 n.8 (emphasis added), as opposed to amendments that merely change a plaintiff's *allegations*, which are not binding, and can be changed again later. The Court distinguished its holding from cases like *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which direct that a plaintiff's post-removal amendment of her amount-in-controversy allegations will not divest the federal court's diversity

[7] NIPSCO acknowledges that some other circuits have applied *Royal Canin* to CAFA cases. *E.g.*, *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 622 (9th Cir. 2025). Unlike *In re Burlington*, those decisions are not binding on this Court. *See Hart v. Wal-Mart Stores, Inc.*, 360 F.3d 674, 680 (7th Cir. 2004) ("it would generally be an abuse of discretion for a district court to follow out-of-circuit precedent which conflicts with binding precedent from its own circuit"). Those decisions also do not engage with the legislative history of CAFA relied on by the Seventh Circuit, which reflects a concern about plaintiffs remanding properly removed class actions by manipulating their class allegations. Nor do those decisions overturn the rule in *Standard Fire* (left untouched by *Royal Canin*) that nonbinding amendments to allegations do not affect federal jurisdiction.

jurisdiction, including because it is not binding and can "change over the course of litigation." 604 U.S. at 38 n.8.

*Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), also forecloses Plaintiffs' arguments here. There, the named plaintiff tried to keep a class action in state court by stipulating that the class would seek less than $5 million. *Id.* at 590–91. The Supreme Court held that the stipulation could not defeat CAFA jurisdiction, because a named plaintiff cannot bind absent class members before certification and the stipulation might not survive the certification process. *Id.* at 593–95. Treating "a nonbinding stipulation as if it were binding," the Court explained, would "exalt form over substance," and run counter to CAFA's objectives of preventing class plaintiffs from manipulating their way out of federal court. *Id.* at 595.

Plaintiffs' proposed amendment is the same tactic in a different form. Rather than cap damages, it proposes to rewrite the class allegations, which can change again unless and until a class is certified. Nothing in *Royal Canin* suggests the Supreme Court would sanction a post-removal amendment that manipulates a class definition to deprive a defendant of the CAFA jurisdiction it was entitled to when the suit was filed. *Standard Fire* confirms the opposite.

In addition, Plaintiffs' proposed nonbinding carve-outs highlight an adequacy problem. Class representatives and counsel owe absent members a fiduciary duty not to "throw away" a class recovery. *Id.* at 594 (quoting *Back Doctors*, 637 F.3d at 830–31). But Plaintiffs and their counsel here propose to abandon any alleged class recovery for resident non-citizens or from federal enclaves for no reason other than forum or judge preference. The Court should therefore "ignore" this proposed concession. *Id.* at 595–96; *Millman*, 2017 WL 1165081, at *5 ("look[ing] at the substance beyond the form of artificial pleadings attempting to defeat CAFA jurisdiction to determine whether jurisdiction is proper").

### D. Allowing Plaintiffs to Divest this Court of CAFA Jurisdiction by Manipulating Class Allegations Would Violate CAFA.

By its text, structure, and purpose, CAFA was "clearly designed" to prevent plaintiffs from "artificially structuring their suits to avoid federal jurisdiction," just as Plaintiffs admittedly are trying to accomplish. *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008). "Legislative history supports that view: according to a Senate Report, CAFA 'was necessary because the previous law 'enable[d] lawyers to game the procedural rules and keep nationwide or multi-state class actions in state court.''" *F5 Cap. v. Pappas*, 856 F.3d 61, 81 (2d Cir. 2017) (quoting S. Rep. No. 109–14, at 4 (2005)). To that end, Congress directed that its provisions "be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed." *Dart*, 574 U.S. at 89 (quoting S. Rep. No. 109–14, at 43 (2005)).

One way in which CAFA's text prevents forum manipulation is by enacting the rule that, in removed cases, jurisdiction is determined ***when the class action is filed***. *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010). The statute defines "class action" as any civil action "filed" under Rule 23 or a state class action statute. 28 U.S.C. § 1332(d)(1)(B). Thus, "jurisdiction attaches when a suit is ***filed*** as a class action," and cannot be divested by subsequent manipulation of the complaint's allegations. *Cunningham*, 592 F.3d at 806 (emphasis in original).

Unlike traditional diversity jurisdiction, CAFA's text provides specific instructions on when citizenship is determined:

> Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) ***as of the date of filing*** of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

28 U.S.C. § 1332(d)(7) (emphasis added); *see also* S. Rep. No. 109-14, 44, 2005 U.S.C.C.A.N.

3, 42 ("New subsection 1332(d)(7) clarifies that the citizenship of members of proposed classes would be determined as of the date the action was filed. . . . The only exception is where the original complaint does not indicate the existence of federal jurisdiction and plaintiffs later serve paper (particularly an amended complaint) that creates such citizenship or makes it evident. Then, consistent with the approach in existing section 1446(b), the 'snapshot' of class membership citizenship is taken as of the date on which that new paper is served.").

Accordingly, under § 1332(d)(7), the citizenship snapshot is taken from the pleading that first made the case removable—here, the First Amended-Class Action Complaint on August 17, 2026. [DE 5.] And under § 1332(d)(1)(B), CAFA jurisdiction attached as of that filing. Plaintiffs' manipulation of their allegations cannot divest this Court's jurisdiction under CAFA.

## CONCLUSION

Plaintiffs' remand motion fails to carry their burden. NIPSCO has shown minimal diversity with record evidence, while Plaintiffs offer no evidence whatsoever for either CAFA exception. Federal enclave jurisdiction also independently supports removal. Plaintiffs' proposed post-hac, nonbinding changing of their class allegations cannot eliminate CAFA jurisdiction that attached at removal. NIPSCO respectfully requests that the Court deny Plaintiffs' Motion to Remand [DE 14] and grant any other relief the Court deems just and proper.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Brian Watson*
Brian O. Watson (36350-45)
Rodney Perry (40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on October 29, 2026, these papers were served on all parties by CM/ECF electronic means.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Brian Watson*

Brian O. Watson (36350-45)
Rodney Perry (40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*