**UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JACK TIPOLD, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, individually and on behalf of all others similarly situated, | Case No. 2:26-cv-00459-PPS-JEM |
| Plaintiffs, | CASE BELOW:<br>Porter Superior Court 1<br>Porter County, Indiana<br>Cause No. 64D01-2608-CT-009189 |
| v. | |
| NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC, | |
| Defendant. | |

**PLAINTIFFS' RESPONSE TO NIPSCO'S COMBINED BRIEF IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION**

Plaintiff, JACK TIPOLD ("Jack"), individually and on behalf of all others similarly situated, including MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY ("Co-Plaintiffs") (collectively, "Plaintiffs"), by counsel, ALLEN LAW

GROUP, LLC, hereby respond to Defendant, Northern Indiana Public Service Company, LLC's, Combined Brief in Support of Its Motion to Strike Class Allegations and in Opposition to Plaintiffs' Motion for Preliminary Certification ("NIPSCO's Motion") [DE 20], and respectfully state as follows:

**ARGUMENT**

As set forth below, NIPSCO's Motion must be denied for several reasons. First, it is a substantive motion on the merits of this case whereas Plaintiffs' pending Motion for Leave to Amend and Motion to Remand challenge the Court's ability to hear this case at all. Those threshold issues should be resolved before the Court weighs in on any merits-based argument.

Even assuming jurisdiction is appropriate with the Court, NIPSCO's Motion must be denied.

**A. Because Remand is Appropriate, the Court May Not Address the Merits of NIPSCO's Motion.**

On October 2, 2026, Plaintiffs filed a Motion for Leave to Amend their First Amended Complaint. [DE 9.] The proposed amendment would redefine the proposed class in this matter, as well as the related exclusions from future class members, and eliminate the federal jurisdictional anchors asserted by NIPSCO to justify removal of this case from state court. As "master[s] of the complaint," Plaintiffs have control over the claims they bring and parties they bring them against, allowing them to "establish—or not—the basis for a federal court's subject-matter jurisdiction." *Royal Canin U.S.A., Inc. v.*

*Wullschleger*, 604 U.S. 22, 35 (2025); *see also Zurbriggen v. Twin Hill Acquisition, Inc.*, 178 F.4th 1081, 1087 (7th Cir. 2026) (noting reasoning of *Royal Canin* applies to federal class action jurisdiction).

Additionally, on October 5, 2026, Plaintiffs filed a Motion to Remand, showing that remand was required for several reasons (in addition to their Proposed Second Amended Complaint vitiating any federal jurisdictional basis for this matter):

- NIPSCO failed to adequately prove removal was appropriate under the Class Action Fairness Act ("CAFA").

- Even if NIPSCO carried its burden of showing removal was appropriate, CAFA contains two express statutory exceptions that both apply in this case and require the Court to decline jurisdiction.

- NIPSCO overstated the scope of Federal Enclave Jurisdiction in its removal. Indeed, Federal Enclave Jurisdiction requires "most, if not all" of the operative events to have occurred on a federal enclave. Here, however, only a hypothetical (and de minimis at most) quantity of injuries or harm could have occurred in federal enclaves.

[DE 14.]

Because remand is necessary, the Court cannot decide the merits of NIPSCO's Motion to Dismiss or Stay. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). "[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" *Id.* (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83,

94–95 (1998)). Thus, outside of "a few extraordinary cases"—none of which apply here—determinations of jurisdiction "must precede merits in dispositional order." *Id.*

In short, this case is a state-centric matter, with state-centric parties, and state-centric injuries. There is no basis for it to be in federal court. The Court must therefore remand it and allow the merits of this dispute to appropriately be decided in state court. At a minimum, the Court should hold NIPSCO's Motion in abeyance until it has ruled on Plaintiffs' Motion to Remand and Motion for Leave to Amend.

**B. NIPSCO's Motion to Strike is Premature.**

NIPSCO's motion to strike is premature. As NIPSCO states, striking is for "facially and inherently deficient" allegations. [DE 20, p. 6]; *Drake v. Mirand Response Sys.*, 2020 U.S. Dist. LEXIS 132010 *4 (S.D. Ind. 2020). "But motions to strike class allegations are generally disfavored." *Id.* "If the dispute over certification is factual in nature and discovery is needed to determine whether to certify a class, a motion to strike class allegations at the pleadings stage is premature." *Id.*

Plaintiffs' Motion for Preliminary Class Certification was filed in state court, as a placeholder and to facilitate class-focused discovery. As it stated, Plaintiffs "anticipate that this putative class will be further refined into specific subclasses based upon timing and location of outages as well as categories of damages sustained after discovery is taken." [DE 6, ¶ 5.] Like FRCP 23, Indiana law expressly permits such conditional class certifications. [DE 6 ¶ 2]; Ind. Trial Rule 23(C)(1) ("order may be conditional"); Fed. R.

Civ. P. 23, Advisory Committee Note to Subdivision (c)(1) ("[a]n order embodying a determination can be conditional").

The Seventh Circuit has approved of such placeholder actions as well. *See, e.g.*, *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (noting class-action plaintiffs can move to certify at the time of filing complaint to protect putative class from attempts to "buy off" named plaintiff).[1] The Seventh Circuit expressly rejected the argument that plaintiffs would "move for certification prematurely, before they have fully developed or discovered the facts necessary to obtain certification." *Id.* In such an instance, the parties "can also ask the district court to delay its ruling to provide time for additional discovery or investigation." *Id.* In fact, in some cases "a court may abuse its discretion by not allowing for appropriate discovery before deciding to certify a class." *Id.*

Here, NIPSCO seeks to kill this case at the outset, without allowing for any discovery that would lead to refined and precise class definitions for this case moving forward. Plaintiffs' motion was, as it said, "Preliminary." It is premature to strike it. At most, the Court should hold Plaintiffs' Motion for Preliminary Class Certification in abeyance and allow discovery to define the class and sub-classes in this matter.

### C. To the Extent the Class is Viewed as "Fail-Safe," the Remedy is to Refine the Definition, not Reject Class Certification Outright.

[1] *Damasco* and several other opinions were overruled by *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015), but only "to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy." That is not the issue here.

Plaintiffs' Proposed Class (as drafted in their First Amended Complaint), is defined as follows:

> All Indiana residents who suffered personal injury and/or pecuniary harm because of NIPSCO's negligent vegetation management practices which caused or contributed to the disruption of electrical service and widespread power outage on and after August 17, 2024.

[DE 5, ¶ 12.]

NIPSCO alleges this is an impermissible "fail-safe" class. [DE 20, pp. 8–10.] A "fail-safe" class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northsore Univ. HealthSystem*, 559 F.3d 802, 825 (7th Cir. 2012). "Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science." *Id.* The remedy, however, should be "by refining the class definition rather than flatly denying class certification on that basis." *Id. Cf. Wal-Mart Stores, Inc. v. Rhodus*, 808 N.E.2d 1198, 1203 (Ind. Ct. App. 2004) (under Indiana law, a court may redefine or restructure classes in order to maintain lawsuits on their merits).

To the extent the Court finds Plaintiffs' state-law class action definition is built around a fail-safe definition of a class member, the Court's remedy should be to refine the definition in the certification order rather than deny class certification. *Messner*, 559 F.3d at 825; *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017). For example, the Court could refine the definition (including incorporating the language of Plaintiffs' Proposed Second Amended Complaint [DE 9-1]) to:

> All Indiana citizens whose utility service address lost power on and after August 17, 2024, in an outage NIPSCO's records attributed to vegetation interfering with or impacting NIPSCO's electrical transmission and distribution lines and infrastructure.

Such a refinement maintains adequate protections against class overbreadth but eliminates at least one element of the complaint that will still have to be proven: NIPSCO's negligence in performing vegetation management leading to the outage.

**D. Plaintiffs' Allegations Satisfy Rule 23(A).**

NIPSCO argues Plaintiffs' Motion for Preliminary Certification fails Rule 23(A)'s requirements to show numerosity, commonality, and typicality. [DE 20, pp. 21–23.]

**Numerosity.** First, NIPSCO alleges that Plaintiffs offered only speculation of numerosity in asserting that there are "several hundred thousand" likely potential class members. [DE 20, p. 22.] The numerosity requirement hinges on "not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enterprises, Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). Courts may make "common sense assumptions" in determining numerosity. *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). The exact number of class members need not be alleged. *Id.*

NIPSCO's argument is so patently absurd as to be insulting to anyone who was in northwest Indiana in early August this year. With respect to the August 11, 2026, derecho alone, NIPSCO itself laid out the widespread range and power of that storm. [DE 11, pp. 6–7.] It shows, with pictures, how the storm impacted nearly all of northwest Indiana. [DE 11, pp. 6–7.] Its Notice of Removal contends that the storm impacted major

universities across the area with tens of thousands of students being impacted, as well as hundreds of NIPSCO's own business customers. [DE 1, p. 7.] And its own public statements throughout and following the storm concede that hundreds of thousands of its customers lost power. *See, e.g.*, "NIPSCO Completing Storm Restoration Work, *available at* https://www.nipsco.com/our-company/news-room/news-article/nipsco-completing-storm-restoration-work ("The August 11 derecho and storms in the following days inflicted the worst damage in known company history, knocking out power to approximately 375,000 customers which represents approximately 80% of our electric customers.").

**Commonality.** Plaintiffs' Proposed Class adequately alleges "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). NIPSCO attempts to parse out each plaintiff's claim as individual—that it owed an individualized duty to each class member; that it breached those individualized duties on an individual bases; and that breach caused individual harm. [DE 19 ¶ 3.b.].

What matters in determining commonality "is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common **answers** apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 132 (2009)). Thus, to show commonality, Plaintiffs only need to show "that 'the same conduct or practice by the safe defendant gives rise to

the same kind of claims from all class members.'" *McCaster*, 845 F.3d at 800 (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). "The critical point is 'the need for **conduct** common to members of the class.'" *Id.* (quoting *Suchanek*, 764 F.3d at 756)).

NIPSCO attacks questions Plaintiffs never posed: whether NIPSCO was individually negligent toward each Plaintiff and whether the nature of each Plaintiffs' individualized damages can be traced back to NIPSCO's misconduct. But "[n]either Rule 23 nor any gloss that have decided cases have added to it requires that **every** question be common." *Suchanek*, 764 F.3d at 756. "It is routine in class actions to have a final phase in which individualized proof must be submitted. . . . if commonality of damages were also essential, 'then class actions about consumer products are impossible.'" *Id.* (quoting *IKO roofing*, 757 F.3d 599, 602 (7th Cir. 2014)).

Contrary to NIPSCO's improperly narrow reframing of this case, NIPSCO owed all Plaintiffs the **same** duty: to adequately perform vegetation management in accordance with its approved vegetation management plan. It is, as *McCaster* requires, the same conduct or practice by NIPSCO giving rise to the same kind of claims from all class members. NIPSCO's failure to do so breached its duty. That common breach of NIPSCO's common duty then caused harm to Plaintiffs. This is not "allegedly injurious conduct" that "differs from plaintiff to plaintiff." *Id.* (citing *Dukes*, 564 U.S. at 356)). Thus here, the common questions boil down to:

- Whether NIPSCO's vegetation management program met the standard of care;
- Whether NIPSCO departed from the vegetation management program approved by the IURC;
- If so, whether NIPSCO's conduct caused, contributed to, or exacerbated power outages during the defined period for the class or particular sub-class; and
- If so, whether NIPSCO's conduct willful, and/or wanton.

*Suchanek* says that one common question is enough. There are multiple here. Moreover, each question has a single answer, which can be drawn from NIPSCO's own documents. This is precisely the requirement of *Dukes*. Plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Dukes*, 564 U.S. at 350. "[D]etermination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

**Typicality.** NIPSCO argues that Jack's claims are not typical of the remaining members of the class because of the fact pattern underlying them and the nature of his harm. [DE 20, pp. 23–24.] NIPSCO's argument fails to cite, much less follow, the law.

"A representative's claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and the claims are based on the same legal theory." *In re VMS*, 136 F.R.D. at 475. "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "We have not previously interpreted Rule 23(a)(3) to require that each member

of a class suffer precisely the same injury as the named class representatives . . . and we decline to construe the Rule as containing such a requirement." *Id.* at 233.

Jack's claim arose from the same event or course of conduct as every other class member: NIPSCO's failure to conduct adequate vegetation management leading to, contributing to, or exacerbating a power outage. His claim is based on the same legal theory as every other class member. That his injury might be worse, lesser, or different than another class member is not the test for typicality.

**E. Plaintiffs' Allegations Satisfy Rule 23(B).**

Plaintiffs agree this claim involves damages and not injunctive relief. But NIPSCO alleges that Plaintiffs cannot satisfy Rule 23(b)(3) because there are individualized questions predominating their negligence claim, such as "what caused each outage, whether NIPSCO owed a duty concerning the vegetation at issue, whether any duty was breached, what caused each person's claimed damages and outage duration, and whether there was comparative and nonparty fault." [DE 19, ¶ 3.c.] It then spills pages of ink raising a tiring series of straw man arguments about how it does not owe individual duties to individual class members; how hard it would be to prove it individually breached those fictional individual duties; proving causation of damages when some outages are not caused by vegetation; the application of comparative fault to each individual class member; and the application of punitive damages. [DE 20, pp. 13–20.]

This is simply another attempt by NIPSCO to morph this case into something it is not. At best, what NIPSCO seeks to apply a heightened level of ascertainability as to identifying class members and claims that has been rejected by the Seventh Circuit. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015). "Nothing in Rule 23 mentions or implies this heightened requirement under Rule 23(b)(3)." *Id.* The appropriate way to address the requirements of Rule 23(a) and "especially (b)(3)" is to "balance countervailing interests to decide whether a class action 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

As set forth above, there is only one duty at issue in this case: NIPSCO's obligation to adequately perform vegetation management in accordance with its approved vegetation management plan. Plaintiffs' First Amended Complaint alleges numerous examples of how NIPSCO breached that duty. [DE 5, ¶¶ 22.a.–22.r.]

Similarly, the fact that there are multiple outages potentially at issue in the timespan of Plaintiffs' claim—some of which may have been caused by vegetation and some of which may not—does not prohibit class certification. Plaintiffs fully anticipate this action being divided into sub-classes based on, among other things, the particular outage at issue and potentially categories of damages. NIPSCO itself possesses the information to identify vegetation-driven outages. Allowing preliminary certification

and discovery, though, will enable the parties and Court to narrow and define those classes appropriately. The need for additional discovery is not a bar to class certification.

And again, that Plaintiffs might have varying forms of damages is not a bar to certification—it is an expectation. *Suchanek*, 764 F.3d at 756. The onerous burden NIPSCO seeks to apply to class certification is both contrary to the requirements of Rule 23 and would have the effect of making consumer class actions such as this one "impossible." *Id.* The Advisory Committee comments to Rule 23 likewise provide the example of "a fraud perpetrated on numerous persons by the use of similar misrepresentations" which would be "an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class." Fed. R. Civ. P. 23 (Notes of Advisory Committee on 1966 amendments, Note to Subdivision (b)(3)).

**CONCLUSION**

It is inappropriate for the Court to proceed with NIPSCO's Motion to Strike Class Allegations before first resolving Plaintiffs' Motion for Leave to Amend their First Amended Complaint and Motion to Remand, both of which set forth grounds to return this matter to the state court. Any substantive issues must be resolved by the state court.

Nevertheless, NIPSCO's motion fails on its merits as well. At most, it should be held in abeyance while this case proceeds with class-focused discovery in order to produce refined class and sub-class definitions.

**WHEREFORE**, Plaintiff, JACK TIPOLD, individually and on behalf of all others similarly situated, and Co-Plaintiffs, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, and CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, respectfully request the Court issue an order:

a. Denying NIPSCO's Motion to Strike Class Allegations; and

b. Affording all other relief just and proper in the premises.

Respectfully submitted,

**ALLEN LAW GROUP, LLC**
*Attorneys for Plaintiffs*

*/s/ Jeffrey L. Lund*

Kenneth J. Allen (3857-45)
Otto J. Shragal (25792-64)
Jeffrey L. Lund (22454-49)

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, a true and accurate copy of the foregoing documents was electronically filed with the Clerk of the Court using the ECF system and has been served on all counsel of record by electronic means.

*/s/ Jeffrey L. Lund*
Jeffrey L. Lund (22454-49)