**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JACK TIPOLD, MARGARET SHRAGAL, GENELL CREAL and WILEY CREAL, TERESA BARON, ALFRED and LATASHA ALLEN, MALAYA GULLY, MICHAEL ZIMMER, WILLIAM ZABANEH, CAROL NORRIS and KIM NORRIS, LAWRENCE SHARON, DUSTIN BROWN and JENNIFER BROWN and JOSHUA BROWN, and CHARLES BRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC,<br><br>Defendant. | No. 2:26-cv-00459-PPS-JEM |

**NORTHERN INDIANA PUBLIC SERVICE COMPANY, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

Brian O. Watson (36350-45)
Rodney Perry (40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn St., Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*

## TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

ARGUMENT .........................................................................................................2

I. Motions to Strike Exist to Weed Out Facially Deficient Class Allegations. .......................2

II. Plaintiffs Do Not Contest That They Assert a Fail-Safe Class. ..........................................3

III. Plaintiffs' Class Allegations Cannot Satisfy Rule 23(a) or 23(b). ......................................6

A. Plaintiffs Identify No Legitimate Common Question. ............................................6

B. Plaintiffs Cannot Show Predominance or Superiority. ...........................................8

CONCLUSION ......................................................................................................10

## INTRODUCTION

Defendant Northern Indiana Public Service Company, LLC ("NIPSCO") submits this reply to Plaintiffs' response to NIPSCO's motion to strike class allegations [DE 24] and in further support of that motion [DE 20].

Plaintiffs' response confirms that their negligence claims cannot proceed on a class-wide basis. According to Plaintiffs, their class allegations are merely a "placeholder" for theories they intend to "refine" later. [DE 24 at 4, 6.] That is not how Rule 23 works. Plaintiffs point to a long outdated 1966 Advisory Committee Note to argue class certification may be "conditional" [DE 24 at 5], while failing to recognize that the Rule was amended in 2003 to "eliminate[] district courts' authority to conditionally certify class actions." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 482 n.11 (2013) (citing Advisory Committee's 2003 Note on subd. (c)(1) of Fed. R. Civ. P. 23). Indeed, the Rule was amended specifically to delete the provision that class certification "may be conditional" to ensure rigorous compliance with Rule 23, including the "critical need [] to determine how the case will be tried." Advisory Committee 2003 Note, Fed. R. Civ. P. 23(c)(1). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (discussing the "rigorous analysis" required by Rule 23).

Plaintiffs' individual claims also cannot be adjudicated on a class-wide basis, as they present no common questions for purposes of Rule 23(a)(2) and require predominating individualized inquiries under Rule 23(b)(3)—particularly as to causation and damages—that have led courts across the country to hold power outage class actions uncertifiable. Plaintiffs have no response to this ample body of case law, so they just ignore it.

Unable to meet the merits of NIPSCO's arguments, Plaintiffs focus on the sequence with which they contend the Court must address all the pending motions. That is wasted argument, for

NIPSCO agrees that the Court should, of course, first rule on the jurisdictional motion—Plaintiffs' motion to remand [DE 14, 18, 23]—before addressing this or any of the other pending motions. That said, NIPSCO disagrees with Plaintiffs' suggestion that the Court should rule on their motion for leave to amend *before* the motion to remand. [DE 24 at 2.] Plaintiffs' motion to remand should be decided first, as they obviously cannot move to remand an amended complaint that has not yet been allowed. If the Court finds jurisdiction is lacking (which it is not), then there is no power to grant Plaintiffs' motion for leave to amend. Accordingly, the Court should "decide [Plaintiffs'] motion to remand without reference to their [] motion for leave to file an amended complaint." *Mahon v. Cyganiak Plan., Inc.*, 41 F. Supp. 2d 910, 912 (E.D. Wis. 1999).

**ARGUMENT**

**I. Motions to Strike Exist to Weed Out Facially Deficient Class Allegations.**

Plaintiffs' response makes the significant concession that their bid for class certification is merely a "placeholder" for theories they intend to "refine[]" and present later. [DE 24 at 4.] That admission alone is sufficient to deny their motion for preliminary class certification.

It also illustrates that their complaint is ripe to have the class allegations stricken now at the pleading stage. A plaintiff is "obliged in its complaint to allege facts bringing the action within the appropriate requirements of [] Rule [23]." *Cook Cnty. Coll. Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972). The Supreme Court has encouraged courts to "review carefully" class allegations to see if they can satisfy Rule 23. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim"). When, as here, the plaintiff's pleading fails to show compliance with one or more requirements of Rule 23, the class allegations should be stricken. *See Wright v. Mishawaka Hous. Auth.*, 225 F. Supp. 3d 752, 762 (N.D. Ind. 2016) ("Ms. Wright doesn't show common

questions of law or fact or that her case is typical for the class. The court thus grant[s] MHA's motion to strike class allegations.").

Plaintiffs argue in their response that motions to strike are generally disfavored. [DE 24 at 4 (citing *Drake v. Mirand Response Sys., Inc.*, No. 1:19-cv-01458-RLY-DML, 2020 WL 4218335, at *2 (S.D. Ind. July 22, 2020)).] But they are disfavored when "the dispute over certification is factual in nature and discovery is needed to determine whether to certify a class." *Drake*, 2020 WL 4218335, at *2. That is not the case here. Plaintiffs identify no factual dispute regarding the legal arguments raised by NIPSCO's motion, and they identify no discovery that is needed to determine whether to certify their utterly implausible class allegations.

Because Plaintiffs' class allegations are "facially and inherently deficient," they should be stricken. *Id.* Doing so now will conserve "court and party resources" by weeding out Plaintiffs' ill-conceived class allegations, *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-cv-01570-SEB, 2015 WL 1505675, at *6 (S.D. Ind. Mar. 31, 2015), while securing the "just, speedy, and inexpensive determination" of the Plaintiffs' individual claims consistent with Federal Rule of Civil Procedure 1.

## II. Plaintiffs Do Not Contest That They Assert a Fail-Safe Class.

Plaintiffs do not deny that they seek to represent a fail-safe class: "All Indiana residents who suffered personal injury and/or pecuniary harm *because of* NIPSCO's *negligent* vegetation management practices *which caused or contributed to* disruption of electrical service and widespread power outage on and after August 17, 2024." [DE 5 ¶ 12 (emphasis added); DE 6 ¶ 3 (emphasis added).] This definition requires at least three merits determinations just to identify class members: (1) was NIPSCO allegedly "negligent" in managing vegetation at a person's property, (2) did that alleged negligence "cause[] or contribut[e]" to a person's outage, and (3)

did the person suffer alleged personal injury or pecuniary harm "because of" the outage. [DE 20 at 8–9.] Plaintiffs do not disagree.

Plaintiffs' only argument is that if the Court finds this is a fail-safe definition (and Plaintiffs do not deny that it is),[1] then the Court should "refine the definition in the certification order" rather than striking it. [DE 24 at 6.] Why should this Court be burdened with correcting Plaintiffs' acknowledged failings? Plaintiffs certainly offer no authority for the remarkable proposition that a plaintiff can proceed through discovery without addressing a concededly fail-safe class definition. Case law holds otherwise. *See, e.g., O'Flynn v. PHH Mortg. Corp.*, No. 1:22-CV-00335-JMS-MG, 2024 WL 4553116, at *12 (S.D. Ind. Oct. 23, 2024) (striking class allegations where plaintiffs failed to address problems with class definition, "instead simply stating that the problem can be fixed down the road, after discovery"); *Gaddis v. Zanotti*, No. 19-cv-781-DWD, 2020 WL 6382020, at *5 (S.D. Ill. Oct. 30, 2020) (striking class definition where plaintiff failed to address why it was not a fail-safe); *DuRocher*, 2015 WL 1505675, at *6 ("Plaintiffs cannot promise to, at some undisclosed time in the future, revise their proposed class definition to satisfy Rule 23's requirements. … Defendants are entitled to know the class definition being alleged against them").

Plaintiffs suggest that the Court "could" refine the definition to read: "All Indiana citizens whose utility service address lost power on and after August 17, 2024, in an outage NIPSCO's records attributed to vegetation interfering with or impacting NIPSCO's electrical transmission and distribution lines and infrastructure." [DE 24 at 7.] Plaintiffs have not sought to

[1] The fail-safe quality of Plaintiffs' class definition has nothing to do with the "heightened ascertainability" standard rejected by the Seventh Circuit in *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 658 (7th Cir. 2015). [DE 24 at 12.] *Mullins* expressly disallowed fail-safe class definitions. 795 F.3d at 660–61.

amend their class definition in this manner, and the Court should decline their invitation to speculate about how they may or may not do so in the future. *See Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. CIV.A. 12-929, 2015 WL 401443, at *4–5 (W.D. Pa. Jan. 28, 2015) ("It appears that Plaintiffs are attempting to account for Defendant's arguments by amending the Complaint in their briefing; this is impermissible.") (citation omitted). As written, the class definition is a fail-safe prohibited by Seventh Circuit precedent. [DE 20 at 8–9].

Plaintiffs' hypothetical class definition would remain uncertifiable in any event. Even if a customer reported to NIPSCO that they believed their outage may have been caused by trees, that report would not mean that it was true, let alone that the trees were within NIPSCO's control or that the trees were maintained negligently. Plaintiffs concede this definition would include many individuals who have no claim for negligent vegetation management against NIPSCO. [*See* DE 24 at 7 (class members would have to prove "NIPSCO's negligence" concerning the vegetation), 12 (conceding some outages "may not" have been caused by vegetation at all).] A class that is defined to include individuals who were not injured by the defendant cannot be certified. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) ("If, however, a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."); *Vann v. Dolly, Inc.*, No. 18 C 4455, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020) (striking class allegations because the proposed class "would capture individuals who have not suffered the harms complained of").

In addition, Plaintiffs' new, hypothetical class definition of "citizens … *whose utility service address* lost power" contradicts their merits arguments. [DE 24 at 7 (emphasis added).] In responding to NIPSCO's motion to dismiss, Plaintiffs argue that their alleged class is not

narrowed to customers whose service addresses that lost power. [DE 22 at 12, 20.] Plaintiff Tipold, for example, does not claim injury at his customer service address. [DE 5 at 9.] But "a class representative must … possess the same interest and suffer the same injury' as the class members." *Dukes*, 564 U.S. at 348–49 (citations omitted).

**III. Plaintiffs' Class Allegations Cannot Satisfy Rule 23(a) or 23(b).**

**A. Plaintiffs Identify No Legitimate Common Question.**

Plaintiffs' class allegations also should be stricken because they cannot identify any common question for which "[the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Plaintiffs allege the common question is "whether NIPSCO failed to adequately perform vegetation management ... , resulting in or exacerbating ... outages and preventable harm to members of the putative class." [DE 6 ¶ 8(b); *see also* DE 5 ¶ 15; DE 9-1 ¶ 16.] As NIPSCO demonstrated (and Plaintiffs again do not contest), whether NIPSCO was allegedly negligent in managing vegetation at one person's property will not answer whether NIPSCO was negligent in managing vegetation at another person's property, much less whether that negligence had anything to do with the outages at either person's property.

Plaintiffs try to reframe their alleged "common question" into four questions, which only makes the lack of commonality even clearer. The first two reframed "common questions" are "whether NIPSCO's vegetation management program met the standard of care" and "whether NIPSCO departed from the vegetation management program approved by the IURC" [DE 24 at 10.] Commonality requires more than merely asking "Is that an unlawful [] practice?," *Dukes*, 564 U.S. at 349, or "Was the defendant negligent?" *Abbott v. Am. Elec. Power, Inc.*, No. 2:12-CV-00243, 2012 WL 3260406, at *3 (S.D.W. Va. Aug. 8, 2012). "Commonality requires the [Plaintiffs] to demonstrate that the class members '*have suffered the same injury*'" by the same

alleged conduct. *See Dukes*, 564 U.S. at 349 (quoting *Falcon*, 457 U.S. at 157) (emphasis added). That is impossible, since Plaintiffs admit the causes of outages will vary and may have nothing to do with vegetation. [DE 24 at 12.]

Plaintiffs concede they will have to make individualized causation showings with their next question: "whether NIPSCO's conduct caused, contributed to, or exacerbated power outages" for particular members of the class. [DE 24 at 10.] NIPSCO cited a legion of cases holding that it is impossible to certify power outage class actions regardless of an alleged systemic failure, because the cause of each outage, and the reasons for its duration, will vary and must be determined on an individual basis. *See Abbott*, 2012 WL 3260406, at *4 ("[A] power outage cannot be viewed as a single event that is the result of a single cause. Outages in customers' homes may be caused by factors other than the power company's alleged negligence."); *Bellermann v. Fitchburg Gas & Elec. Light Co.*, 18 N.E.3d 1050, 1061 (Mass. 2014) (even if "the plaintiffs were to prove FG & E's systemic failures, it would still remain for each class member to show that those failures caused a prolonged outage on an individual basis."); *LaFleur v. Entergy, Inc.*, 737 So. 2d 761, 765–66 (La. Ct. App. 1998) ("Rank speculation would be required to conclude that the entire putative class suffered all of its damages due to the negligence of [the utility]."). [2] Plaintiffs cannot identify a single case, from any jurisdiction, holding otherwise.

---

[2] *See also In re Long Island Power Auth. Hurricane Sandy Litig.*, 161 N.Y.S.3d 174, 177–78 (N.Y. App. Div. 2021) (whether utility's failures caused each outage was "a fact-driven inquiry which is both speculative and hopelessly individual"); *Muise v. GPU, Inc.*, 851 A.2d 799, 815–16 (N.J. Super. Ct. App. Div. 2004) (plaintiffs' "lack of preparedness" theory "does not answer" how to determine causation for each outage); *Entergy Gulf States, Inc. v. Butler*, 25 S.W.3d 359, 363–64 (Tex. App. 2000) ("individual determinations would have to be made in order to show that Entergy was the cause of each individual's harm"); *LaFleur*, 737 So. 2d at 766 ("[E]ach member of the purported class would be required to prove that Entergy's breach of duty caused his or her power outage").

Plaintiffs' last question is also necessarily individualized, not common: "whether NIPSCO's conduct [was] willful, and/or wanton" as to any class member. [DE 24 at 10.] Due process forbids awarding one proposed class member punitive damages for NIPSCO's alleged willful or wanton misconduct against someone else. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418–28 (2003). Each class member must prove whether NIPSCO acted willfully or wantonly against them individually. *Philip Morris USA v. Williams*, 549 U.S. 346, 353–55 (2007); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 418–19 (5th Cir. 1998). Plaintiffs offer no argument to the contrary.

**B. Plaintiffs Cannot Show Predominance or Superiority.**

Plaintiffs agree they can only seek certification under Rule 23(b)(3). [*See* DE 24 at 11 ("Plaintiffs agree this claim involves damages and not injunctive relief.").] Plaintiffs' allegations satisfy neither of that Rule's predominance or superiority requirements.

Rule 23(b)(3)'s predominance requirement is even "more stringent" than Rule 23(a)(2)'s commonality requirement, because it requires not only that there are questions common to the class, but that these "predominate" over questions affecting only individual class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997). NIPSCO identified a host of individualized inquiries necessary to resolve each class member's negligence claim, including regarding every element of their claims (duty, breach, causation, damages) and NIPSCO's defense of comparative fault. [DE 20 at 12–20.] Plaintiffs have no response to these many issues, so they brush them away by suggesting they can be addressed, somehow, by dividing the class "into sub-classes based on, among other things, the particular outage at issue and potentially categories of damages." [DE 24 at 12.] Plaintiffs never explain how this would address the many individualized issues identified by NIPSCO, because it plainly would not.

Even a single power outage requires "an individualized causation analysis," because the outage in each location "may be caused by factors other than the power company's alleged negligence." *Abbott*, 2012 WL 3260406, at *4. Likewise, "[e]ach customer could potentially have incurred different injuries" from an outage and "will be required to present individualized proof of damages," irrespective of whether they are grouped together by their categories of damages claimed. *Id.* at *5; *Brown v. New Orleans Pub. Serv., Inc.*, 506 So. 2d 621, 623 (La. Ct. App. 1987) ("The causative link between this power failure, which is not the same for all plaintiffs, and the alleged injuries such as broken water pipes, frozen plants, personal inconvenience, discomfort, and illness, must be proven under the specific facts of each claim."). Every negligence claim also will require an individualized determination of party and non-party fault under Indiana's comparative negligence statute, which will be unique to each Plaintiff.

The only element Plaintiffs bother to address is duty [DE 24 at 12], and even there, Plaintiffs get it wrong. The issue is not "NIPSCO's obligation to adequately perform vegetation management in accordance with its approved management plan." [*Id.*] It is whether NIPSCO owed a duty at all to each class member, which depends on whether vegetation caused their outage *and* that vegetation was within NIPSCO's control. *See Abbott*, 2012 WL 3260406, at *4 ("each customer will be required to determine that the 'offending tree' that damaged him or her was under [the utility's] 'jurisdiction'"); *LaFleur*, 737 So. 2d at 765–66 (same). There is no way to do so without examining the circumstances of each person's outage.

Plaintiffs cannot explain how their class allegations satisfy Rule 23(b)(3)'s superiority requirement, so they do not even try. "Failure to respond to an argument—as the [Plaintiffs] have done here—results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). There is no dispute that the numerous individual issues involved in each Plaintiff's claim would

require thousands (or hundreds of thousands) of mini trials. That renders "the class action procedure inferior, rather than superior," to other forms of adjudication. *Fontcuberta v. Cleco Corp.*, 222 So. 3d 235, 249 (La. Ct. App. 2017); *Abbott*, 2012 WL 3260406, at *5 (similar).

## CONCLUSION

For these reasons, and those stated in its opening brief [DE 20], Defendant Northern Indiana Public Service Company, LLC requests that this Court enter an order under Federal Rule of Civil Procedure 23(d)(1)(D) striking Plaintiffs' class allegations from their pleading.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson (IN 36350-45)
Rodney Perry (IN 40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn Street, Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on November 19, 2026, these papers were served on all parties by CM/ECF electronic means.

Dated: November 19, 2026

Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson (IN 36350-45)
Rodney Perry (IN 40026-45)
RILEY SAFER HOLMES & CANCILA LLP
1 S. Dearborn Street, Suite 2200
Chicago, Illinois 60603
(312) 471-8700
bwatson@rshc-law.com
rperry@rshc-law.com
docketdept@rshc-law.com

*Attorneys for Defendant Northern Indiana Public Service Company, LLC*